## SMITH *v.* MURPHY.

### Opinion delivered December 22, 1919.

1. RECEIVERS—AUTHORITY TO MAKE CONTRACTS.—Where a receiver of partnership land made a contract for rent of the land after a petition for sale of land had been filed, and subsequently, and before any arrangements had been made by the lessees, the court ordered the receiver not to rent the lands, the lessees contracted at their peril, and are bound to take notice of the receiver's incapacity to conclude a binding contract without the court's sanction, since they became parties to the litigation with respect to the property.

2. JUDICIAL SALES—PURCHASER'S RIGHT OF POSSESSION.—Since the purchaser at a judicial sale has a clear right to possession as against all parties to the proceedings, in which the sale is made, which right the court will summarily enforce by writ of assistance, except where the parties in possession are not parties to the suit and claim by legal right, or are entitled to hold on account of superior equity.

3. APPEAL AND ERROR—REVERSAL.—Though the chancellor erred in denying a writ of assistance to a purchaser at receiver's sale on account of a lease which the receiver had improperly executed, yet where such error can not be remedied by restoration of the land to the purchaser because the period of lease had already expired, a reversal of the judgment will carry a judgment in favor of the purchaser for rent and costs.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed.

*E. B. Stokes* and *Crawford & Hooker,* for appellant.

1. The court erred in refusing to put appellant in possession of the lands purchased by him. All parties dealing with the receiver must and did know that whatever he took was subject to the approval of the court, and that if they did make the contract with the receiver in October or November, 1918, for the year 1919, they knew that the contract would not be effective if the land was sold and certainly unless the rent contract was approved by the court, and

2. The rent the receiver agreed to accept was not a fair and adequate rental and should not have been approved by the court, even if there had been no sale.

3. When the sale was confirmed and deed approved the title and right to possession passed to the purchaser. High on Receivers (2 Ed.), sec. 186; 23 A. & E. Enc. L. (2 Ed.), 1066. The testimony shows that no definite contract for rent was ever agreed to by the receiver and Bridge & Company, but if it had it should have been set aside by the court. 5 Pom. Eq. Jur., sec. 208; 51 C. C. A. 640. See also 77 Ark. 216-220; Kirby's Digest, § 6321; 17 A. & E. Enc. L. (2 Ed.), 1013-14. The rights of the purchaser were superior to those of Bridge & Company, renters from year to year, and who knew of the efforts to sell, and the chancellor erred in in refusing a writ of assistance.

*Taylor, Jones & Taylor,* for appellees.

A writ of assistance does not go as a matter of right but is in the sound discretion of the court. 2 R. C. L. 728; 65 Am. St. 353. Nor will it go where there is an adverse holding by a *bona fide* claimant to the possession. 82 Am. St. 124; 5 *Id.* 245; 44 *Id.* 449. The purchaser knew the receiver was likely to rent the lands as usual and it was unfair for appellant to wait until December 5, 1918, when the rent contract was already made for the year 1919, and the court exercised its sound discretion in refusing the writ of assistance and the decree is correct.

HUMPHREYS, J. Appellant and William E. Murphy formed a partnership in 1905 to buy, cultivate and sell lands, and to raise, buy and sell live stock. They continued the partnership business until November 30, 1910, when a bill was filed in the Jefferson Chancery Court to dissolve the partnership, sell the personal property and place the real estate in the hands of a receiver for the purpose of rental, during the pendency of the proceeding. By consent of the parties, Dr. Arthur Fowler was appointed receiver. He accepted the trust and qualified by taking the oath and giving bond, after which he took charge of all the assets, sold the personal property and applied the proceeds on the debts of the firm.

He rented the lands from year to year up to, and including, the year 1919. His custom was to rent the lands in the fall for the succeeding year. On June 5, 1918, appellant applied for a sale of the lands in order to liquidate the unpaid indebtedness of the firm and wind up its affairs. Pending this application, either in the latter part of October or the first part of November, 1918, the receiver rented the lands, known as the Murphy and Gross places, to William E. Murphy and F. P. Bridge & Company for the year 1919, at a rental of $1,000 and necessary repairs. On the 5th day of December, 1918, the court made an order, directing the receiver not to rent the lands for the year 1919. On January 4, 1919, by consent of parties, all the partnership lands were ordered sold. The lands sold at public auction to appellant, on January 29, 1919, for $32,250. He executed a note with approved security for the purchase money, and the commissioner reported the sale to the court and asked a confirmation thereof. On February 11, thereafter, appellees interposed, by petition, objections to the issuance of a writ of possession for the Murphy and Gross places, on the ground that they had rented the lands for the year 1919, from the receiver, and had made arrangements for the cultivation of same. Appellant filed a reply to the petition, setting up his purchase, the execution of an approved note for the purchase money, and asserting his right to a writ of possession. On February 14, 1919, the receiver filed a report, setting up the rental contract for the Murphy and Gross places to F. P. Bridge & Company for 1919, for $1,000, and asking that the contract and his tenants' possession be approved. The report of sale by the commissioner and of rental by the receiver, the petition and response thereto, requesting a refusal of the writ of possession, together with the evidence introduced for and against the issuance of the writ, were submitted to the court, upon which the confirmation of the sale of the lands was decreed, the rental contract approved and a writ for the possession of the Murphy and Gross places denied   From the decree approving the

rental contract and denying the writ of possession, an appeal has been duly prosecuted to this court.

Evidence was adduced in support of the rental contract, tending to show that the tenants had rented and occupied the Murphy and Gross places for a number of years; that it was the custom of the receiver to rent them in the fall for the following year; that the present contract was made in October or November, 1918, for 1919, in keeping with the custom, before the court made an order not to rent the lands for the year 1919; that the tenants had made sundry arrangements to cultivate, and they and their subtenants and share-croppers were in possession of the lands, ready to cultivate them; that no other lands for miles around could be rented, and that the rental contract of $1,000 and necessary repairs was a fair rental for the lands.

Evidence was adduced in support of the issuance of the writ, showing the sale, pursuant to a consent order, the purchase and execution of a secured and approved note for the purchase money, and tending to show that a thousand dollars and necessary repairs was not a reasonable rental value of the place for the year 1919.

The sole issue presented by this appeal is whether the court erred in refusing the writ of possession for the Murphy and Gross places. This contract of rental was made with the receiver after a petition for the sale of the lands had been filed. On December 5, 1918, before any arrangements had been made by the tenants, their subtenants or share-croppers to cultivate the lands, the court had ordered the receiver not to rent the lands for the year 1919. This order was clearly a disapproval of the rental contract made in the latter part of October or the first part of November. The general rule of law is that "all persons dealing with receivers * * * do so at their peril, and are bound to take notice of their incapacity to conclude a binding contract without the sanction of the court." High on Receivers (2 Ed.), § 186; American & English Enc. of Law, vol. 23, p. 1066. Not only the receiver, but also all parties who contract with him

in relation to the property in controversy held by him, become parties in litigation in respect to the property, and must be governed by the orders concerning it. It is a well recognized principle of law that: "The purchaser at a judicial sale has a clear right to the possession of the property sold as against all parties to the proceeding in which the sale is made, and this right the court will summarily enforce by writ of assistance, or in some other appropriate manner." Am. & Eng. Enc. of Law (2 Ed.), vol. 17, p. 1014. It is true that a writ of assistance does not go as a matter of course, but it is also true that it is never withheld unless the exigencies of the particular case require it. The only exigencies which will warrant a denial of the writ are where the parties in possession are not parties to the suit and claim by legal right, or where they are entitled to hold on account of paramount equities to the rights of the purchaser at the sale.

We think the finding of the chancellor, to the effect that $1,000 and repairs was a reasonable rental for the places for the year 1919 is supported by a preponderance of the evidence. The year has about closed, so the error of the chancellor in refusing the writ can not be remedied by restoration of the lands to appellant. At this late date, a technical reversal of the decree can result only in a judgment in favor of appellant for rents and costs.

For the error indicated, the decree is reversed and judgment is directed here for $1,000, the rental value of the places, together with his costs.