MATTHEWS *v.* BROWN.

Opinion delivered March 28, 1921.

ESTOPPEL—MISLEADING CONDUCT.—Where a lessee of a minor's land induced the guardian to sell the land, and posted notices of the sale, and bid for the land at the guardian's sale, without stating that he had a lease on the land, he will be estopped, after a sale of the land to the highest bidder, to assert the existence and validity of his lease.

Appeal from Perry Chancery Court; *Jordan Sellers,* Chancellor; reversed.

*J. H. Bowen* and *Mehaffy, Donham & Mehaffy,* for appellant.

Appellee, by his conduct, is estopped from questioning the validity of the guardian's sale. 10 R. C. L. 694. He had full knowledge of all the facts and is estopped. 10 R. C. L. 762, 781; 2 Pom., Eq. Jur. (4 ed.), § 802. Appellee's lease, if he has one, is unenforceable. C. & M. Dig., §§ 5031-36. If he had a valid case, he is estopped from setting it up.

*Sellers & Sellers,* for appellee.

1. The pretended guardian's sale was absolutely void. 123 Ark. 396-7; 135 *Id.* 551; 130 *Id.* 21. The court never acquired jurisdiction, as the petition did not set out that there were no debts, nor did the order of court, and no bond was filed by the guardian. C & M. Dig., § 5046; 85 Ark. 556; 89 *Id.* 284. This is not a collateral attack upon the validity of a pretended guardian's sale.

2. There is no estoppel. The citations from 10 R. C. L. are not in point. If there is estoppel the doctrine applies to appellant, and there is nothing in appellant's contention of estoppel.

SMITH, J.   Appellant bought the lands here sued for at a guardian's sale, and, after paying the amount of his bid and receiving a deed, he brought this suit to recover the possession of the land from appellee, who was the tenant in possession at the time of the sale: The lands had been owned by M. G. Smyers, and upon his death a part thereof were set aside to his widow as dower, and the remainder thereof to the widow and minor children as homestead. The widow leased the land to appellee for a year, and upon the expiration of that lease renewed it for a term of five years. The widow was the guardian of the minor children.

Appellee conceived the idea of buying the land, and opened negotiations with the widow and guardian on the subject. He agreed to pay $5,000 if the lands were sold. This offer appeared to be satisfactory, as the widow de-

sired to reinvest in a farm in Texas. Appellee employed John L. Hill, an attorney, to obtain the necessary orders of court, and paid the attorney's fee therefor, although he was later reimbursed out of the proceeds of the sale.

Appellee was the moving party throughout, and posted the notices of the sale. He was present on the day of the sale, and pursuant to his agreement so to do made a bid of $5,000. It does not appear what intervening bids were made, but appellant bid $6,500, and the lands were struck off to him at that price, and he received the guardian's deed. The widow also executed an individual quitclaim deed.

Appellant bases his demand for the possession of the land on these two deeds; while appellee contends the sale was made subject to his lease, and further that the guardian's sale was void for numerous reasons. Appellant defends the guardian's sale, and attacks the validity of appellee's lease. In addition, appellant says appellee, by his conduct, has estopped himself to question the validity of the guardian's sale.

We have concluded this last stated contention is well taken, and, as it appears decisive of the case, we do not decide the other questions presented.

In addition to the testimony set out above, it was shown that during the negotiations between appellee and the guardian, and prior to the guardian's sale, appellee was offered $500 to surrender and cancel his lease, but after consideration of the offer he declined to accept it. These facts were not known to appellant prior to the sale.

Mr. Hill testified that he knew by hearsay that appellee had a lease, but he had never had any conversation with him about the lease before the sale. He knew the guardian had no thought of the lease getting in the way of the sale, and that the order of sale probably never would have been applied for but for appellee's suggestion. He testified that, when the order of sale was procured, nothing was said about the sale being made subject to the lease.

Appellee testified that at the beginning of the movement to sell the land he expected to become the purchaser, and that he had an agreement with the guardian and those interested to pay $5,000, and that he considered his lease as a part of the purchase price which he would have to pay. He also testified that under his lease he had made valuable improvements which he would not otherwise have made.

There was no order of the probate court directing the guardian to make the lease, or approving it, and appellant testified that he examined the official records before purchasing, and found no reference to the lease. That the orders of the court regarding the sale contained no reference to the lease, and the notices of sale were likewise silent on the subject, and that he had no information that appellee claimed a lease until about two minutes before the sale. That Mr. Hill, who had charge of the proceedings, represented the guardian in crying the sale, and stated at the time of the sale that he understood appellee had a lease or claimed to hold a lease. Appellee was present and made no statement himself but became a bidder at the sale.

The court below found that the sale was ordered by the probate court of Perry County, and had been held in the manner and form as prescribed by law, and that at the sale appellant became the purchaser, but subject to the lease of appellee, and that appellee was entitled to the possession of the land until the expiration of the lease on January 1, 1923.

We think appellee is estopped. There was no authority to sell the land except under the order of the court, and it is the policy of the law that lands thus sold shall bring the highest price obtainable. To that end bidding should be open and on a common basis. Appellant had made an examination of the record to satisfy himself about the sale which was about to be made. Other bidders—if there were such—may have taken the same precaution. Appellee had procured this sale to be ordered

by the court, and appellant testified that he understood appellee had himself posted the notices of sale. A copy of this notice was offered in evidence, and there was nothing in it to indicate that an incumbered title would be sold or that possession of the land would not be obtained by the purchaser. Appellee admitted posting the notices, and he must, of course, be charged with knowledge of the fact that the purpose of the notice was to invite competition. The notice required approved security of the purchaser, and appellant had evidently made his arrangement to comply with this requirement. So, no doubt, had other bidders. Appellee furnished no corroboration or explanation of the auctioneer's statement in regard to the lease, or the period of its duration, and the bidding proceeded. If appellee had made a statement, which had deterred others from bidding, his bid of $5,000 would have been the only bid; whereas the sum of $6,500 was actually bid and paid for the land. Who can know what action the court might have taken in confirming the sale if a showing had been made that, after being instrumental in having the order of sale procured, appellee had suppressed bidding by asserting the existence of his lease?

We think appellee's attitude toward this sale is such that it would be inequitable to permit him now to assert the existence and validity of his lease. Rorer on Judicial Sales, § 443; *Epley* v. *Witherow,* 7 Watts (Penn.), 163; 10 R. C. L., pp. 694 and 781; Pomeroy's Eq. Jur. (4 ed.), vol. 2, § 802; *Pabst* v. *Ferch,* 147 N. W. 714; *Connor* v. *Abbott,* 35 Ark. 376; *Trapnall* v. *Burton,* 24 Ark. 399; *Danley* v. *Rector,* 10 Ark. 211; *Shall* v. *Biscoe,* 18 Ark. 142; *Smith* v. *Murphy,* 141 Ark. 410.

The decree of the court below is, therefore, reversed and the cause will be remanded with directions to the court below to award appellant possession of the land.