## INGRAM v. RAIFORD.

### Opinion delivered October 17, 1927.

1. JUDGES—BURDEN OF PROVING DISQUALIFICATION.—A party alleging that a special judge was disqualified to preside in the cause, has the burden of proving such fact by evidence clearly showing that the ground of disqualification exists.

2. APPEAL AND ERROR—ABANDONMENT OF APPEAL.—Where a party to a decree in partition excepted to the confirmation of sale and prayed an appeal, but later moved the court to dismiss the appeal with prejudice, such party could not thereafter complain of the decree.

3. JUDGES—DISQUALIFICATION OF JUDGE—WAIVER.—Objection to the qualification of a special chancellor elected to try a suit cannot be raised for the first time by exceptions to the report of sale by the commissioner.

4. PARTITION—JURISDICTION TO ORDER SALE.—In an action for partition the chancery court has jurisdiction to order a sale of the property necessary to an equitable division thereof, upon evidence other than and wholly independent of a report of commissioners.

5. JUDGMENT—MODIFICATION AFTER TERM OF COURT.—After expiration of the term of court at which a decree is rendered, the court rendering it cannot set it aside or modify it except in the manner and for the causes specified in Crawford & Moses' Dig., § § 6290-6296, or by bill of review under the chancery practice.

6. JUDGMENT—RES JUDICATA.—A decree overruling an exception to a report to a commissioner's sale in partition proceedings on the ground that the party excepting was a minor, having an interest in the property and for whom no guardian was appointed, held res judicata on a subsequent motion based on the same ground.

7.  APPEAL AND ERROR—PRESUMPTION FROM ABSENCE OF EVIDENCE.—
    Where a decree is based in part on oral testimony not before the
    Supreme Court, that court will assume that the trial court found
    every fact which might have been found on oral testimony essen-
    tial to the decree.

8.  INFANTS—PROCEDURE TO SET ASIDE DECREE.—While infants are
    special wards of the chancery court, and, if their minority is
    disclosed on the face of the record, such courts are alert to see
    that their rights are protected, still in enforcing their rights they
    must follow the statutory procedure in order to set aside a decree.

Appeal from Union Chancery Court, First Division;
*John E. Harris*, Special Chancellor; affirmed.

*Allyn Smith*, for appellant.

*Gaughan & Sifford, Powell, Smead & Knox* and *C. E.
Wright*, for appellee Felsenthal.

WOOD, J.   In February, 1923, J. W. Raiford *et al.*
filed a petition in the Union Chancery Court against B.
R. McClannahan *et al.* for the partition of certain lands
described in the petition.   The action was between the
claimants under the will of J. L. Prim and the heirs of
his wife, Fannie Primm.   Most of the defendants named
in the petition were nonresidents, among whom was
Charlie Ingram.   Affidavit for warning order against the
nonresident defendant was made on April 28, 1923, and
warning order was issued by the clerk on May 9, 1923.
On June 30, 1924, the attorneys for the defendant, Clan-
nahan, and those claiming to be the attorneys for the
other defendants, among them R. H. Ingram and Charlie
Ingram, filed a motion suggesting the disqualification of
the regular chancellor.   On the same day the regular
judge certified his disqualification, and, as the record
recites, "the clerk of said court called an election for
the purpose of electing a special judge to hear said cause,
and, said election being duly had in the manner pre-
scribed by law, John E. Harris was duly elected as
special judge, and took the oath of office and duly quali-
fied as provided by law."   The record further recites:
"Thereupon it was mutually agreed by and between the
parties litigant that the said John E. Harris should pre-
side as special judge in said cause," and the record of the

decree further recites that the cause was submitted and judgment in partition rendered on that day by John E. Harris, special chancellor. The decree concludes with the recital that the court retains jurisdiction for the purpose of receiving the reports of the master, the receiver and the commissioners appointed to make partition of the lands. Thereafter, on January 27, 1925, the chancery court, through its special chancellor, John E. Harris, entered what is designated "a supplemental decree," in which it is recited "that all the parties to the cause received due notice of said hearing and were represented by their respective counsel."

The court, after finding that all of the defendants, including R. H. Ingram and Charlie Ingram, were tenants in common of an undivided interest in the lands, leases, money and other property, which were the subject of the controversy, and that the respective interests of the defendants were not the subject of litigation in the case, modified its former decree of June 30, 1924, so as to adjudge that all of the defendants were owners of an undivided one-half interest in the property as tenants in common and were entitled to receive their proportion of the funds, and directed the receiver to pay the same over to their attorneys, Marsh & Marlin. The supplemental decree further recites: "The court finds from the evidence adduced at the trial of said cause and by admission of all the parties hereto in open court, that the lands herein involved and particularly described in the original decree are not susceptible of partition in kind among the parties litigant, and that it would be impracticable and inequitable to make such partition; and it is therefore ordered, adjudged and decreed that said lands be sold at public outcry to the highest and best bidder, on a credit of three months, after the same has been advertised for a period of thirty days by four weekly insertions in some paper," etc. The court then appointed the receiver as commissioner to make the sale.

The following decrees were entered prior to the decree from which these appeals come, to-wit: Decree of

partition in the cause was rendered June 30, 1924, and a supplemental decree at a subsequent term January 27, 1925, and then another decree on May 5, 1925. From the last decree an appeal was taken to this court, and by the decision of this court it was adjudicated "that the several interests of all parties in the lands involved were correctly ascertained and determined in the original decree of June 30, 1924." See *Ingram* v. *Wood,* 172 Ark. 226, 288 S. W. 393.

In the meantime the land was sold by the commissioner, and the special chancellor, on October 22, 1925, entered a decree confirming the sale, but later, on January 9, 1926, that decree was set aside on the ground that court was being held on the same day in another county by the regular chancellor, and the court thereupon entered the following order: "Whereupon the court caused to be called all attorneys representing any parties in interest in this cause who appear of record in this court, and it is agreed in open court by all of said attorneys that said sale may and shall be set aside and held for naught, and it appearing that Verta Rowe, one of the heirs and parties in interest in this cause, has died since the institution of this suit, and is survived by a minor or infant, to-wit, Verta Rowe, a minor, it is by the court considered, ordered, adjudged and decreed that Alvin Stevens be and he is hereby appointed guardian *ad litem* for said Verta Rowe, a minor, and that he be and he is hereby appointed administrator *ad hoc* of the estate of Verta Rowe, deceased, and this cause is ordered to proceed as to the interest of the said Verta Rowe in the name of Alvin Stevens, guardian *ad litem* of Verta Rowe, a minor." The decree then recites: "And it appearing to the court, from testimony heretofore taken and from the nature of this cause, and the number of parties involved, that it is impossible to partition the property in kind among the parties in interest without great damage and detriment thereto." The court thereupon reappointed E. W. McGough special commissioner, and directed him

to make sale of the property on certain terms therein specified in the decree.

At the March term, 1926, of the First Division of the Union Chancery Court, E. W. McGough, who had been appointed to sell the property, made his report, showing that he had sold the same according to the former orders and decrees of the court, and that the same was purchased by I. Felsenthal for the sum of $21,500, he being the highest and best bidder. On the 6th day of March, 1926, certain of the plaintiffs in the original action, among them Elmer Rowe, Jr., as the only surviving heir of Verdie Raiford, by his next friend, E. C. Dunn, through their attorneys, J. R. Wilson and E. L. Compere, filed what they designated a petition to set aside sale, which operated as and should have been designated as exceptions to the report of the commissioner. On the same day C. G. Taylor, a substitute for the original plaintiff, G. A. Dunn, through his attorneys, Joiner & Stevens, adopted the exceptions that had been filed by the other plaintiffs, and, on the same day, Charlie Ingram, through her attorneys, Bailey & Bailey, filed her petition or exceptions to the report of commissioner making sale, asking that the same be set aside. In her petition she set up that all the proceedings in the cause, after the suggestion of the disqualification of the regular chancellor, and all orders and decrees made by the Hon. J. E. Harris, special chancellor, were void, for the reason that, prior to his election as special chancellor, he had been, and at that time was, acting as the attorney *ad litem* for all nonresident defendants in the case, and was then still so acting for such defendants as had not answered for themselves. She alleged that the commissioner who made the sale had never been by proper order appointed as one of the commissioners to make partition of the property; that the commissioners appointed to make partition were M. C. Wade, Berry Davis and J. C. Kinard. She alleged that she was at all times, up to October 9, 1925, a minor, being under eighteen years of age, and that no guardian of any sort or character had ever

appeared for her in this cause, and on the date last above mentioned she became eighteen years of age, and here and now, within the time allowed by law, disaffirmed and rejected all things heretofore done in her behalf in this cause. She prayed the court would refuse to confirm and ratify the sale, that the same be set aside and annulled, and for such other relief as the court might deem just and proper.

The court, on the same day, overruled all exceptions to the commissioner's report of sale, ratified and confirmed the report of sale, and directed the commissioner to make a deed to the purchaser, I. Felsenthal, "to which order, findings and judgment of the court the exceptors and each of them saved their separate and several exceptions, and prayed an appeal to the Supreme Court, which is granted." On the same day the commissioner presented and acknowledged in open court the deed which he had executed to Felsenthal, and which the court duly approved.

On June 7, 1926, the plaintiffs, who had previously filed exceptions to the report of sale, including Elmer Rowe, Jr., a minor, the only surviving heir of Verda Raiford Rowe, by his next friend, E. C. Dunn, filed their motion, praying the court to dismiss with prejudice the further prosecution of their appeal and with prejudice to any further action on their exceptions to the sale. The court thereupon entered an order in which was contained the following recital, to-wit:

"It appearing that the parties have stipulated that the appeal herein will not be prosecuted, and the court being well and sufficiently advised in the premises, doth grant the motion. It is therefore ordered, considered, adjudged and decreed by the court that the petition of E. C. Dunn, Mrs. Nettie Gantt, Will Raiford, Ben Raiford, Mrs. Lulu Dunn Robinson, Verta Rowe, a minor, the only surviving heir of Verta Rowe, deceased, by E. C. Dunn, her next friend, seeking to set aside the sale of the property in the above styled cause, be dismissed with prejudice, and that the prayer for appeal to the Supreme Court

be dismissed with prejudice to the further prosecution of said appeal, and with prejudice to the further prosecution of any further claim on the part of the petitioners in the above styled cause, and with prejudice to any further action on the exceptions to the sale filed by the petitioners herein.   It is so ordered.''

Some time during the latter part of the year 1926 or the first part of the year 1927 (the date is nowhere shown in the record) what purported to be a motion was filed in the Union Chancery Court in the case of *Raiford et al.* v. *McClannahan et al.,* by Charlie Ingram, through her attorney, Allyn Smith, in which she set up, in substance, that all the proceedings had in the action between the parties for a partition resulting in a judgment against her were null and void, because she was a minor when the action was begun and the judgment in partition rendered; that she had no notice of the action, and that no guardian *ad litem* was appointed to defend for her, and that no answer was ever filed setting forth her interest in the lands sought to be partitioned; that the judgment was rendered largely by consent.  She set up that she was eighteen years old at the time of the filing of this motion, and prayed the court to set aside and vacate the judgment in partition.  The motion was duly verified, and in an addendum thereto Charlie Ingram called upon all the parties, plaintiffs and defendants, to take notice that the motion would be presented to the Union Chancery Court at its first sitting.

About this time what purported to be a motion was also filed in the above styled cause by R. H. Ingram, Polk Ingram, Emma Ingram, Pauline Ingram, Ruby Ingram McMullen, Jim McMullen and Mattie J. Ingram, in which it is alleged that the decree in partition in the above styled cause was rendered by John E. Harris as special chancellor, and that said Harris, at the time of his election, was the attorney *ad litem* for nonresident defendants, duly appointed by the clerk of the chancery court on the 9th day of May, 1923, and that, by reason of his being such attorney for the nonresident defendants, he was

disqualified from sitting as special chancellor to try the cause. They prayed for a *nunc pro tunc* order to be entered of record showing that the clerk of the chancery court of Union County, First Division, had appointed John E. Harris as attorney for the nonresident defendants.

A motion purporting to be a motion in the above styled case was also made by Elmer F. Rowe, Sr., guardian of Elmer F. Rowe, Jr., through his attorney, Allyn Smith, to set aside the sale made in the suit for partition, on the alleged ground that the special chancellor, John E. Harris, was disqualified by reason of his being attorney *ad litem* for nonresident defendants, and also on the ground that Verda Rowe, one of the plaintiffs in the action, had died in the month of February, 1925, and that the action had not been properly revived, and that the rights of her minor son, Elmer F. Rowe, Jr., had not been properly represented and protected; also that the sale under the partition decree was by a receiver, without appraisement and report of commissioners in partition, as provided by statute. On these motions the chancery court on April 18, 1927, entered an order reviving the cause in the name of Elmer F. Rowe, Jr., by his guardian, Elmer F. Rowe, Sr. The court thereupon found that E. C. Dunn, as the next friend of Elmer F. Rowe, Jr., had, on March 6, 1926, filed a petition to set aside this sale, which petition had been denied by the chancery court and an appeal taken therefrom, and that the court was without jurisdiction, and therefore dismissed the motion of Elmer F. Rowe, Jr., to set aside the sale, from which Elmer F. Rowe, Jr., by his guardian, Elmer F. Rowe, Sr., prayed and was granted an appeal. The court also found that Polk Ingram, Pauline Ingram, Ruby Ingram McMullen, Jim McMullen, R. H. Ingram and Mattie Ingram could not maintain their motion to set aside the judgment and sale herein, nor their motion to have the clerk enter a *nunc pro tunc* order showing that he had appointed the Hon. John E. Harris as attorney *ad litem* for the nonresident defendants. The court

thereupon dismissed their motion without prejudice. The court further dismissed the motion of Charlie Ingram to vacate the original judgment and the decree confirming the sale, on the ground that this action was pending likewise in the Supreme Court. From these orders an appeal was prayed and granted.

First. The first question presented by the appellants is that John E. Harris, the special chancellor who tried the original cause in partition, and who made all of the subsequent orders and rendered the subsequent decrees in the cause, was disqualified to sit in the cause for the reason that, prior to his election as special chancellor, he was acting as attorney *ad litem* for the nonresident defendants. The record shows that the election was held for a special chancellor as prescribed by law, and that John E. Harris was duly elected and duly qualified as provided by law. Conceding, without deciding, that an attorney for nonresident defendants in a cause would be disqualified from sitting as a judge therein, suffice it to say there is no sufficient competent testimony in this record to show that John E. Harris was duly appointed as the attorney for the nonresident defendants. As to the evidence necessary to establish the disqualification of a judge who is duly elected to preside in a cause, Corpus Juris lays down the following rules:

"Unless it is where the affidavit filed is considered conclusive, there is no presumption that a judge is disqualified, the burden being on the party asserting it to present facts showing such disqualification. The evidence must clearly show that a ground exists. A *prima facie* case only is not sufficient." 33 Corpus Juris 1017, § 190.

And in Ruling Case Law it is said: "If the facts alleged are not admitted by the judge, or are denied by the adverse party, it is the duty of the party objecting to lay before the judge the proof of their truth for his determination."

Many cases are cited in notes to these texts. 15 R. C. L. 539, § 27.

Now the statute provides that an attorney for nonresident defendants constructively summoned, and who have not appeared, shall be appointed by the clerk of the court in which the action is' brought. C. & M. Dig., § 6261. The only testimony in the record on this issue was adduced on a motion for *nunc pro tunc* entry to have the clerk of the court make an order on the record showing that he had appointed John E. Harris attorney for the nonresident defendants. The statute does not require the clerk of the court to enter upon the court records the order appointing the attorney for the nonresidents. While such record entry would be satisfactory evidence of his appointment, yet it is not required by the statute, and therefore no such *nunc pro tunc* entry could be made; and the evidence taken upon such motion would not be competent as primary evidence to prove that John E. Harris was appointed attorney for the nonresident defendants in the action. But, even if the mover who suggested the disqualification of John E. Harris had made the proof on their motion to disqualify, which they adduced on the motion for *nunc pro tunc* order, still the evidence would hardly be sufficient to meet the requirements of the law as to the burden of proof on the issue of the disqualification of the special chancellor.

On the motion for *nunc pro tunc* entry the only testimony adduced tending to prove that John E. Harris was appointed attorney for the nonresidents were the printed words "John E. Harris, attorney for the nonresident defendants." These words appeared at the bottom of a newspaper clipping showing the warning order in the case as published, pasted on the publisher's affidavit of publication. It is unnecessary to set forth all of the testimony of the clerk concerning this. He was asked if he had not made the appointment on the same paper that was sent to the publisher, and stated that he did not do that, that the recorder never puts it on the sheet that goes to the publisher, that "I might have put it on a duplicate sheet." On direct examination he stated that he was sure he had made an appointment of

John E. Harris as attorney *ad litem* for the nonresident defendants, from the paper of proof of publication which was handed him, but, on cross-examination, he stated he did not know of his own knowledge whether he made such appointment or not; he could not tell unless he had his files. All he was basing his opinion on was the fact that the name John E. Harris appeared on the proof of publication by the publisher. He had no personal recollection of it. The concluding question asked him on this issue is as follows: "Is it your custom in some instances to indorse the name of the attorney appointed on the paper sent the publisher?" and he answered: "No, not on that paper."

John E. Harris testified that, as a matter of fact, he did not know whether he was appointed attorney for the nonresident defendants or not; he wrote a letter to the parties named as nonresident defendants in the cause, and stated in the letter that he had been appointed as attorney *ad litem* for all nonresident defendants. As to whether he was ever appointed or not, he did not know. He got his information that he had been appointed from Tom Campbell, an attorney in Little Rock, who was the attorney for some of the plaintiffs.

The above testimony, even if competent, we regard as too indefinite and uncertain to sustain the contention that John E. Harris was disqualified to sit as the special judge in this cause. This applies to the other appellants as well as to Charlie Ingram, but, as to the other appellants, they are precluded from raising the issue for still other reasons. Elmer F. Rowe, Jr., through his guardian, Elmer F. Rowe, Sr., cannot raise it because the record shows that he was a party to the decree of March 6, 1926, by his next friend, E. C. Dunn, in which the court refused to set aside the decree in partition, overruled all exceptions to the report of the sale made by the commissioner, and confirmed and approved such sale. After excepting and praying an appeal from that decree, the record shows that afterwards, on June 7, 1926, he, through his next friend, Dunn, prayed the court to dis-

miss his appeal with prejudice, which was done. Although the trial court erroneously found that that case was in the Supreme Court, nevertheless the court was correct in holding that his motion setting up the disqualification of John E. Harris could not avail, but for a different reason, to-wit, that he had abandoned his appeal in a decree rendered at a former term of the court, in which he might have set up, as an exception to the report of the sale, the disqualification of the judge to sit in the cause. He, as well as the other movers also, are likewise precluded from raising the issue because none of them had raised this issue in the original action for partition or in any of the former proceedings prior to the filing of exceptions to the report of the sale of the commissioner appointed to make the sale in partition. It was too late for them to raise it then. The law is well settled in this State that the disqualification of a judge must be raised *in limine*. Parties cannot wait until a judge acts in a cause and then set up his disqualification.

The true *rationale* of the doctrine is not that the parties to the action, by failure to suggest the disqualification, have, by consent, conferred upon him jurisdiction to try the cause, but rather that, by allowing him to proceed to try the cause, they have estopped themselves from raising the question of his disqualification. As we said in *Washington Fire Ins. Co.* v. *Hogan*, 139 Ark. 130-135, 213 S. W. 78 (5 A. L. R. 1585), "having taken their chances of a favorable judgment at the hands of a judge who, they knew, was personally disqualified, they cannot, after adverse decision, avail themselves of facts which they knew before the judgment was rendered to get rid of it." See also *Pettigrew* v. *Washington County*, 43 Ark. 33; *Morrow* v. *Watts*, 80 Ark. 57, 95 S. W. 988.

Second. One of the grounds urged for reversal is "that the chancery court had no jurisdiction to order the sale in partition because the commissioners appointed to make partition in the original decree for partition did not report that the land was so situated that it could not be partitioned, nor were the commissioners ordered to

make the sale; that the procedure prescribed by §§ 8111
to 8119, inclusive, of Crawford & Moses' Digest, must be
followed in order to give the chancery court jurisdiction
to make the sale,'' which was not done. This court has
decided in several cases directly contrary to this con-
tention. *Moore* v. *Wiley,* 77 Ark. 317, 91 S. W. 184, 113
Am. St. Rep. 151; *Glasscock* v. *Glasscock,* 98 Ark. 151,
135 S. W. 835; *McGehee* v. *Oxner,* 150 Ark. 618, 234 S.
W. 989.

In *McGehee* v. *Oxner, supra,* we said: "Chancery
courts may order a sale of property, if necessary to
effect an equitable division thereof among the owners,
upon evidence other than, and wholly independent of, a
report of commissioners." The decree in partition
recites: "And it appearing to the court, from testimony
heretofore taken and from the nature of this cause and
the number of parties involved, that it is impossible to
partition the property in kind among the parties in
interest without great damage and detriment thereto,"
etc. The court, after such finding, proceeded to appoint
a commissioner to make the sale. This procedure was
authorized under the above decisions. Moreover, the
decree directing the sale of the land for partition was
entered January 6, 1926, by the First Division of the
Union Chancery Court, which was at the December term
of the chancery court. The December term of the First
Division of the Union Chancery Court expired accord-
ing to law February 28, 1926.

It is thoroughly established by our decisions that,
after the expiration of the term of court at which a
decree is rendered, the court rendering it cannot set it
aside or modify it except in the manner and for the
causes specified in the statute or by bill of review under
the chancery practice. See *Turner* v. *Vaughan,* 33 Ark.
454; *Johnson* v. *Campbell,* 52 Ark. 316, 12 S. W. 578;
*Terry* v. *Logue,* 97 Ark. 314, 133 S. W. 1135; *Robinson* v.
*Citizens' Bank,* 135 Ark. 308, 204 S. W. 615.

The procedure for vacating or modifying a judg-
ment or final order of a court after the expiration of the

term is prescribed by §§ 6290 to 6296, inclusive. The exceptions filed to the report of the commissioner making sale, and the petitions seeking to set aside the sale of the commissioner, which operate as exceptions to such sale, do not follow the procedure set forth in the above statute, nor can any of these motions or exceptions be converted into a bill of review. It is expressly held in *Johnson* v. *Campbell* and *Terry* v. *Logue,* above, that a petition to vacate presented by way of objection to the confirmation of report of sale is not the proper practice and that such petitions or exceptions should be rejected.

Third. It is last contended by the appellant, Charlie Ingram, that the decree of June 30, 1924, and the subsequent decrees of January 27, 1925, May 5, 1925, January 9, 1926, and March 6, 1926, are all void as to her, because, at the time the original decree of June 30, 1924, was entered, Charlie Ingram was a minor, and that no defense was made for her by guardian, as required by §§ 1113 and 1114 of Crawford & Moses' Digest. It appears from the record that Charlie Ingram became of legal age on October 1, 1924. This appears from the response and intervention of Charlie Ingram to the petition of I. Felsenthal for a writ of assistance directed against R. H. Ingram to obtain possession of the property, and also from the testimony of her father taken in that cause. In the decrees rendered after June 30, 1924, she made herself a party and set up her minority through her attorneys, Bailey, Nichols & Bailey. After the decree that finally reached this court on appeal, which was affirmed November 23, 1926, a motion for rehearing and to recall the opinion of this court and permit the record to be amended was filed by her attorneys of record, Bailey & Bailey and Allyn Smith. Attention again was called in this motion to the fact that she was a minor when the decree of June 30, 1924, was rendered.

This court, in *Ingram* v. *Wood, supra,* speaking of the decree of June 30, 1924, said: ''It follows from what has been said that the original decree which fixed the

interest of the several parties in the lands involved became final and binding upon appellants and appellees herein with the lapse of the term of the court on the first Monday in September, 1924. The only method by which the decree could have been modified or set aside after the lapse of the term at which same was rendered, except for fraud in the procurement of the same, is the method provided in § 6290 of Crawford & Moses' Digest." The court in that decision affirmed the decree of the chancery court of May 5, 1925, which adjudged that the interest of the parties to the litigation, including Charlie Ingram, "had been correctly ascertained and determined in the original decree of date June 30, 1924." Counsel for Charlie Ingram say of the decree of May 5, 1925, "it is more than possible, and we think, on the face of the record, the court at that time made a proper decree, as there seems to have been no evidence before it other than the bare assertion of counsel in their motion that Charlie Ingram was a minor, and it did not appear that such attorneys were without authority to appear for her." But now they say: "A different state of facts appears. The demurrer of Charlie Ingram, filed in April, 1927, admits that she was a minor at those times and admits that the attorneys who appeared for her on these occasions were not her authorized attorneys."

Now, in her exceptions to the report of the commissioner making the sale, she alleged that at all times up to October 9, 1925, she was a minor under eighteen years of age, and that no guardian of any sort or character had ever appeared for her in this cause. She set up the same facts in her response or intervention in the action by I. Felsenthal for a writ of assistance. The decree of the trial court, in sustaining the demurrer of Felsenthal to the intervention, among other things recites: "I. Felsenthal, as purchaser, files his demurrer on the ground that the matters pleaded in said response cannot properly be raised in this suit, but will require a separate action; that, as shown by the records of the court in this cause, the matters pleaded in said response have

already been adjudicated against the claim of Charlie Ingram, and that the said Charlie Ingram has appealed to the Supreme Court and the matter is there pending.''

The trial court was clearly correct in holding that the decree of March 6, 1926, was *res judicata*. The same issues of her minority, and that no defense was made for her in the former decrees by a regular guardian, or a guardian *ad litem,* were presented in her exceptions to the commissioner's report of sale, and seeking to set the sale aside.    These exceptions were disposed of, finally, in the decree of March 6, 1926.   This decree was rendered twelve days before the decree awarding the writ of assistance to I. Felsenthal of March 18, 1926. Therefore the pleadings and evidence in the writ of assistance proceeding could not have been in evidence in the proceedings resulting in the decree of March 6, 1926. The record does not show that Charlie Ingram proved or offered to prove the allegations of her exceptions to the report of the commissioner, alleging her minority at the time of the institution of the original action, and that no defense had been made for her by a guardian *ad litem.* It devolved upon Charlie Ingram to make good the allegations of her exceptions by proof of same.   The decree of March 6, 1926, as amended (*nunc pro tunc*) recites as follows: ''All parties announcing ready for trial, this cause is submitted upon the original record in this case, the original decree and order of sale, the report of the commissioner filed herein, and exceptions of E. C. Dunn *et al.,* and the motion of Charlie Ingram, and upon the *testimony of witnesses taken in open court,''* etc. None of this oral testimony is brought into the record as the statute requires, and, under familiar rules often announced by this court, we would have to assume that the court found every fact that might have been found on oral testimony essential to the correctness of the decree.   After sustaining the demurrer of Felsenthal to Charlie Ingram's intervention or response to his petition for writ of assistance, the court by decree correctly awarded him such writ, because he set up in his petition

that he was the purchaser and had the commissioner's deed to the land under orders made for a sale of the land by a former decree of the court, which, at the time of the filing of the petition for the writ of assistance, had not been superseded or reversed on appeal. Such showing made by the petitioner entitled him to the writ of assistance, since the answer to this petition showed the matter set forth in such answer had been already adjudicated by a former decree of the court.

In *Northern Road Imp. Dist.* v. *Meyerman,* 169 Ark. 383, 275 S. W. 762, we held, quoting syllabus: "A purchaser at a judicial sale becomes a party to the proceedings, and is entitled to such assistance from the court as is necessary to make the orders and decrees of the court effective." In *Smith* v. *Murphy,* 141 Ark. 410, 216 S. W. 719, we said: "The purchaser at a judicial sale has a clear right to the possession of the property sold as against all parties to the proceeding in which the sale is made, and this right the court will summarily enforce by writ of assistance or in some other appropriate manner," quoting from Am. & Eng. Enc. of Law (2d ed.) vol. 17, p. 1014. See also *Bright* v. *Pennywit,* 21 Ark. 130.

In answer to the suggestion of the learned counsel for Charlie Ingram that the judgment against her is void, and that this court should so hold, we have to say that we do not feel warranted in so holding from the record now before us. In the caption of her motion, or exceptions to the report of the commissioner asking to have the same set aside, she sets out the numerous plaintiffs and defendants that were parties to the action in which the decree of partition (June 30, 1924) was rendered. At the conclusion of her motion she adds what she designates as "a notice to all parties that she has filed suit," etc. By the decree of this court in the case of *Ingram* v. *Wood,* above, it is shown that the interest of all the parties named had been adjudicated and determined by the decree of the Union Chancery Court, May 25, 1925. That decree was final as to all the parties in the original action, except Charlie Ingram, who, to be sure, under the

law, had a right, if she were an infant when the decree was rendered, to have the same set aside if no defense was made for her by natural guardian or a guardian *ad litem;* but the decree so rendered against her was not void, but only voidable. *Martin* v. *Gwynn,* 90 Ark. 44, 117 S. W. 754; *Hare* v. *Ft. S. W. Ry. Co.,* 104 Ark. 187, 148 S. W. 1038. All the parties whom she named in her motion or exceptions to the sale are interested, and would be affected if the sale were set aside on the hearing of her exceptions. She could not and did not bring these parties into court by simply calling upon them in her motion to take "notice that she had filed suit." These parties, whose rights had been adjudicated, were then out of court, and, to bring them in, she would have to do so by the notice the statute requires. True it is that infants are the special wards of courts of chancery, and, where their minority is disclosed on the face of the record, these courts are ever alert to see that all their rights are protected at every step of the proceedings; but where, as here, Charlie Ingram was named as a party defendant and was represented by counsel of record, in all the long litigation, through the numerous orders and decrees resulting in the final decree of May 25, 1925, in which, as it appears on its face, her rights and the rights of all other parties by that litigation were finally adjudicated and determined, then, in order to set aside the decree of the chancery court in which such rights were adjudicated and determined, she must follow the method prescribed in C. & M. Dig., § 6292, *supra,* which calls for a separate action to be instituted by the aggrieved party. It is so held in many cases. See, in addition to those cited above, *Ryan* v. *Fielder,* 99 Ark. 374, 138 S. W. 973. In that case, among other things, speaking of a judgment that was rendered where the infant was not represented by a guardian, we said: "But, if a judgment is rendered against an infant without such defense, it is only voidable under our decisions, and it may be vacated or modified after the expiration of the term of court in which it was rendered, where the condition of such defendant

does not appear in the record nor the error in the pro-
ceedings. The proceedings to vacate the judgment for
this cause must be by complaint, verified by affidavit set-
ting forth the judgment, or order, the ground to vacate
or modify it, and it will not be vacated until it is adjudi-
cated that there is a valid defense to the action in which
the judgment was rendered, the court first deciding upon
the grounds to vacate before trying the validity of the
defense.''

We are convinced, after a painstaking analysis of
this voluminous and complicated record, that none of
Charlie Ingram's exceptions and motions seeking to set
aside the original decree in this cause were tantamount
to a separate action instituted by her to vacate the orig-
inal decree in this cause or the subsequent decree of May
5, 1925. On the record she has made we could not
grant her the relief she seeks without doing violence to
the statutory law, and without also doing injustice to the
other parties, whose rights were finally adjudicated by
the decrees which she now seeks to set aside. They are
equally entitled to have their rights protected, by insist-
ing that the statutory method for vacating decrees be
complied with.

Our conclusion upon the whole case is that the decree
of the chancery court is in all things correct, and it is
accordingly affirmed.