Clarence J. WORTH, *et al. v.*
BENTON COUNTY CIRCUIT COURT

01-1409 89 S.W.3d 891

Supreme Court of Arkansas
Opinion delivered November 21, 2002

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans* and *Stephanie Dzur*, and *Hirsch Law Firm, P.A.*, by: *E. Kent Hirsh*, for petitioner.

*Mark Pryor*, Att'y Gen., by: *Jill Jones Moore*, Ass't Att'y Gen., for respondent.

*Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *David R. Matthews*; *Clark & Spence*, by: *George Spence*; *Ben Lipscomb* and *Jim Clark*, Rogers City Attorney's Office; and *Robin F. Green*, Benton County Attorney, for respondents.

JIM HANNAH, Justice. Petitioners seek a writ of mandamus, or alternatively a writ of prohibition, to prevent the circuit judge from sitting in this case. This case was previously submitted on June 27, 2002, however, we issued a *per curiam* on July 5, 2002, ordering the parties to brief five additional issues. *Worth v. Keith*, 349 Ark. 731, 79 S.W.3d 387 (2002) (*Worth II*). This case is now resubmitted with the additional briefing.

Petitioners allege the circuit judge must recuse where he or his family may be beneficiaries of any tax refund or "rollback." We hold that the trial judge, as a property owner and relative of other property owners affected by the action, does not have an interest of the type that disqualifies a judge. Where a judge has no interest in an action beyond that of the general interest which any other taxpayer or property owner has, he or she does not have a personal or pecuniary interest of the type that disqualifies a judge. The trial judge did not abuse his discretion in refusing to recuse.

*Facts*

We have before us a consolidated case comprised of three lawsuits that were filed in 1997. Respondents filed a motion to dismiss, which was considered as a motion for summary judgment and granted. This court reversed the trial court in *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000) (*Worth I*). Then, on May 31, 2001, the petitioners filed a motion to recuse.

The Petitioners filed a motion for recusal, asserting that at the class-certification hearing on February 22, 2001, the trial judge disclosed that he owned real and personal property subject to taxation by taxing units named in the suit, and that this meant he would be a member of the class. They also asserted that the trial judge had family members who might benefit, depending on the

outcome of the case. The judge stated that he would opt out. However, the Petitioners argued that the judge and his family would still benefit from any "roll back" that might be ordered. The motion for recusal also included the assertion that the judge's appearance of impartiality would be affected, that he was a party litigant in this matter, and that he had a pecuniary interest in the outcome of the suit that disqualified him to sit as judge. The trial court denied the motion. This petition for a writ of mandamus, or in the alternative, for a writ of prohibition, followed.

## Standard of Review

The decision to disqualify is within the trial court's discretion, and we will not reverse the exercise of that discretion without a showing of abuse. *Massongill v. County of Scott*, 337 Ark. 281, 991 S.W.2d 105 (1999). An abuse of discretion can be shown by proving bias or prejudice. *Massongill, supra; Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996).

## Recusal

In the motion to recuse before the trial court, the Petitioners argued that the trial judge had an interest in the suit as a person owning affected real estate, and that therefore he was a member of the class, and a party litigant, and could not sit as judge. Petitioners further argued the trial judge's offer to opt out would be of no import because he would benefit from any roll back that might be ordered, regardless of whether he opted out. The Petitioners also argued that the trial judge had a pecuniary interest in the outcome of the lawsuit and, therefore, he could not sit on the case. The Petitioners then asserted the trial judge's impartiality was called into question because of his interest in the case, and therefore, he could not sit on the case. The Petitioners also asserted that the trial judge's impartiality might be called into question because of benefits that might be received by the trial judge's relatives who owned property. Petitioners finally argued that the benefit received by the judge and his family could be substantial. In *Worth II*, we asked the parties to address the following additional issues:

1. Whether petitioners waived any alleged disqualification based upon the passage of time;

2. Whether petitioners waived any alleged disqualification based upon acquiescing in allowing the allegedly disqualified judge to preside over the case, including hearings, motions, and so on, without moving for recusal until an adverse ruling was made;

3. Whether the trial judge, having a general interest as a property owner and relative of other property owners possibly affected by the case, had a personal or pecuniary interest of the type that disqualifies a judge;

4. Whether the fact that petitioners complain of bias in their favor as the basis for recusal plays a role in analysis; and

5. Whether the trial judge's offer to opt out of the class plays any role in this analysis.

*Worth*, 349 Ark. at 732.

### *Waiver*

■ The disqualification of a judge may be waived.[1] *Miles v. State*, 277 Ark. 470, 644 S.W.2d 240 (1982). Waiver will be found by a failure to seasonably object. *Nowlin v. Kreis*, 213 Ark. 1027, 214 S.W.2d 221 (1948). Further, a failure to bring the matter to the judge's attention may constitute a waiver. *Morrow v. Watts*, 80 Ark. 57, 95 S.W. 988 (1906), *see also Washington Fire Ins. Co. v. Hogan*, 139 Ark. 130, 213 S.W. 7 (1919); *Pettigrew v. Washington County*, 43 Ark. 33 (1884). In *Neal v. Wilson*, 321 Ark. 70, 900 S.W.2d 177 (1995), this court stated: "Nonetheless, respondent waited three months before requesting Judge Lineberger to recuse, and when respondent's request was denied, he never petitioned this court that Judge Lineberger's assignment was improper and lacked jurisdiction." *Wilson*, 321 Ark. at 74. Thus, disqualification of a judge may be waived.

---

[1] In the hearing on June 7, 2001, counsel for the City of Rogers raised the issue of waiver in arguing that the case had been pending for four years, that rulings had been made by the trial court, and that the case had been appealed to the supreme court. Further, in argument at this same hearing, counsel for Plaintiffs stated: "So, I don't think that there's any waiver or any timing issue."

■ ■ It has long been the law in Arkansas that a party may not speculate on the outcome and thereafter take advantage of a fact supporting disqualification known but not raised by him until after an adverse decision is rendered. *Nowlin, supra*; *Byler v.State,* 210 Ark. 790, 197 S.W.2d 748 (1946); *Ingram v. Raiford,* 174 Ark. 1127, 298 S.W. 507 (1927); *Morrow v. Watts,* 80 Ark. 57, 95 S.W. 988 (1906); *Pettigrew, supra.* Petitioners knew of or should have known the facts giving rise to the alleged disqualification on the day the complaint was filed. It would be a poor use of judicial resources to allow a party to wait four years and then complain. Petitioners did not object to the trial judge hearing the motion for summary judgment wherein he ruled against them, and they may not complain now.

■ The facts before us show waiver. We must note the passage of over four years coupled with a motion for recusal only after an adverse ruling on a motion for summary judgment. Here, the parties were obviously aware they were prosecuting a case in the county where the alleged illegal exaction occurred, and that the judge sitting in that county, as well as his family members, were most likely inhabitants of that county protected against illegal exaction by Article 16, Section 13, of the Arkansas Constitution. Any alleged right to disqualification was waived.

*Impartiality*

■ As Petitioners argue, this court has stated that the issue of the appearance of impropriety is a basic issue that must be addressed first. *Huffman v. Judicial Discipline,* 344 Ark. 274, 42 S.W.3d 386 (2001). In *Huffman, supra,* we discussed the Canons of the Arkansas Code of Judicial Conduct. Canon 2A states:

> Canon 2. A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.
>
> A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Canon 3E(1) states as follows:

Canon 3. A judge shall perform the duties of judicial office impartially and diligently.

\* \* \*

E. Disqualification

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. ... .

As we stated in *Huffman*, both Canons 2A and 3E(1) require a judge to protect the integrity and impartiality of the judiciary. Under Canon 2A, a judge must consider whether any action he or she takes promotes public confidence in the integrity and impartiality of the judiciary. Similarly, Canon 3E(1) requires a judge to recuse when his or her impartiality might reasonably be questioned. As we also stated in *Huffman*, an independent judiciary is essential for our society.

Against these concerns must be balanced the judge's duty to hear the cases that come before him or her. There is a duty not to recuse where no prejudice exists. *Massongill, supra.* If there is no valid reason for the judge to disqualify himself or herself, he or she has a duty to remain in a case. *U.S. Term Limits v. Hill,* 315 Ark. 685, 870 S.W.2d 383 (1994). There is a presumption of impartiality, and the party seeking disqualification bears the burden of proving otherwise. *Sturgis v. Skokos,* 335 Ark. 41, 977 S.W.2d 217 (1998). The Petitioners have failed to show the appearance of impropriety.

*Personal or Pecuniary Interest*

A personal proprietary or pecuniary interest, or one affecting the individual rights of the judge, is an interest which will disqualify a judge; however, to be a disqualifying interest, the prospective liability, gain, or relief to the judge must turn on the outcome of the suit. *Sturgis, supra.* Here, the allegation is that the judge stands to gain the refund of taxes that would occur, as well as any roll back that might result. The amount the trial judge would receive is not quantified by Petitioners. The trial judge, as well as his father, his wife, and his son, also own property in Benton County.

The trial judge characterized his son's property holdings as "substantial."

 The argument is made that the trial judge is disqualified in that he is presiding over a case in which he is related to a party within the fourth degree of consanguinity or affinity. In fact, Petitioners argue that he is a party to the litigation. Article 7, Section 20, of the Arkansas Constitution, provides that "[n]o judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degree as may be described by law. . . ." Ark. Code Ann. § 16-13-214 (Repl. 1999). Further, Canon 3E(1)(c) of the Code of Judicial Conduct provides that a judge "shall disqualify himself" when he knows that he or his spouse, parent, or child "has an economic interest in the subject matter in controversy."

What must be determined is whether the interests noted above rise to the level that requires disqualification. We note that the case cited by Petitioners did not involve illegal exaction. We also may not ignore that the Canons "suggest that a judge disqualify when his impartiality may be reasonably questioned." *Carton v. Missouri R.R.*, 315 Ark. 5, 10, 865 S.W.2d 635 (1993). The question becomes whether under the facts in the present case, the impartiality of the trial judge may be reasonably questioned. It may not.

More specifically, the issue before us is whether a trial judge is disqualified from hearing an illegal exaction case where he will receive whatever other taxpayers will receive if the suit were to prevail. That clearly is not the situation where a judge has a personal interest in the outcome of the case as in *Byler, supra*, where the trial judge presided over a murder case in which the victim was the judge's wife's cousin.

 We deal in this case with taxes that affect each taxpayer in Benton County and the noted school districts. The judge and three members of his family are such taxpayers. This is not a case where the judge is a party in the typical sense. Before a judge is disqualified, the interest must be more than that of an ordinary

citizen or taxpayer. *Nowlin, supra.*[2] This is restated in 1996 in *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996), where this court stated that a judge must disqualify himself where he has a personal, proprietary, or pecuniary interest or one affecting his personal rights. An action based upon public issues of annexation, for example, including how that annexation might affect a judge's taxes, is not a suit of a personal nature, but rather one of a general interest in a public proceeding "which a judge feels in common with a mass of citizens." *Foreman v. City of Mariana*, 43 Ark. 324, 329 (1884). This is not the type of interest that disqualifies a judge. *Id.* Where the judge has no interest in the litigation beyond that of a general interest which any other citizen and property owner has, disqualification is not necessary. *Osborne v. Bd. of Improvement*, 94 Ark. 563, 128 S.W. 357 (1910).

Petitioners cite to *Copeland v. Huff*, 222 Ark. 420, 261 S.W.2d 2 (1953), and the later case of *Sturgis, supra*, arguing that any pecuniary interest, however slight, requires disqualification. Both cases merely mention interests and disqualifying interests. Neither case casts light on the nature of a pecuniary interest. Petitioners argue that Article 7, Section 20, is mandatory, and that therefore Judge Keith had no discretion. In essence, Petitioners argue that Judge Keith, as a taxpayer, is a party to the lawsuit because he is an affected taxpayer. The natural consequence of this analysis will be to quickly find there is no judge to try a case of state wide impact where the matter is of general interest.

In *Mears v. Hall*, 263 Ark. 827, 569 S.W.2d 91 (1978), this court stated, "The 'interest' which is disqualifying under these provisions is a personal proprietary or pecuniary interest or one affecting the individual rights of the judge, and the liability, gain or relief to the judge must turn on the outcome of the suit." *Mears*, 263 Ark. at 833-34; *see also, Sturgis, supra; Noland, supra.*

---

[2] In *Nowlin, supra,* the court stated that, "It would, of course, be better practice for the County Judge not to preside in a case where he had signed the petition as his interest might be more than that of an ordinary citizen or taxpayer, which was the interest discussed in *Foreman, et al v. Town of Marianna*, 43 Ark. 324 and *Osborne v. Board of Improvement*, 94 Ark. 563, 128 S.W. 357." *Nowlin*, 213 Ark. at 1029.

These and the other cases cited in this matter are not illegal exaction cases.

In *Nueces County Drainage and Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938 (Tex. Ct. App. 1975), the Texas appellate court discussed whether two justices were disqualified as a consequence of ownership of land in the district where liability for taxes was at issue. The case involved enlargement of a drainage ditch. The Texas Constitution, provides, "No judge shall sit in any case [in which] he may be interested. . . ." Article 7, Section 20, in our own Constitution provides similarly:

> No judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degree as may be prescribed by law; or in which he may have been of counsel or have presided in any inferior court.

Ark. Const. art. 7, § 20.

The Texas Court of Appeals, stated that under its Constitution, "[t]he interest of a judge, in order that he would be disqualified, must in general, be a direct pecuniary or property interest in the subject litigation." *Nueces*, 519 S.W.2d at 951. The Texas Court of Appeals went on to say that, "[w]here a judge's pecuniary interest is not specifically affected, a judge is not by reason of being a taxpayer disqualified from sitting in a case although he may have a merely incidental, remote, contingent or possible pecuniary interest in the subject matter of the suit." *Id.* The Texas Court of Appeals also stated, "It was recognized early on in Texas jurisprudence that the mere fact that a judge is a taxpayer of a city does not as such work a disqualification of the said judge. It if were otherwise, it would be difficult, if not impossible, to get cases tried." *Id.*

The trial judge is simply a taxpayer like any other citizen. On this basis, Petitioners fail to show that the trial judge's impartiality may reasonably be questioned.

*Lack of Prejudice/Judge Shopping*

■ This is quite a curious case. The prejudice alleged is bias in the favor of the Petitioners. That is a somewhat remarkable complaint. There is no duty to recuse where no prejudice is shown. *Osborne, supra.*

■ This case is now more than five years old. In a case this old, it is apparent that the trial judge has presided over more than a few matters in this case. We must also note that Petitioners had to be aware when they filed their suit that the trial judge likely was a property owner and that the trial judge likely had family who owned property. Yet no action toward disqualification was undertaken until late in the case and after the trial judge ruled against Petitioners on the motion for summary judgment. The logical conclusion that arises from these facts must be that Petitioners concluded that they would now be better served by another judge. That is not a basis for disqualification. Rather, it appears to be forum shopping, something this court has not chosen to encourage for obvious reasons. *Patterson v. Isom*, 338 Ark. 234, 992 S.W.2d 792 (1999).

The discussion of the Eighth Circuit Court of Appeals in *Little Rock School District v. Pulaski County School District*, 839 F.2d 1296, 1302 (8th Cir. 1988) is helpful:

> At the outset, we note the irony that most of the major parties to this litigation have at some point moved for the removal of the judge. Not surprisingly, the parties have generally discovered grounds for disqualification at approximately the same time that the District Court has ruled for their adversaries on the merits. The recusal statute does not provide a vehicle for parties to shop among judges. . . .

It appears that in the case before us, Petitioners are shopping for a new judge. Our recusal statute is not a vehicle for parties to shop among judges. On that basis, this petition must be denied.

We also note that the parties were asked to brief the issue of bias. The Petitioners stated in their brief that they did not complain of bias.

Finally, we asked to be briefed on whether the trial judge's decision to opt out of the litigation has an impact on disqualification. Petitioners instead argued about the judge's status as a party, his alleged personal interest, and issues already discussed above.

The petition for a writ of mandamus, or in the alternative, for a writ of prohibition, is denied.

GLAZE and IMBER, JJ., dissent and would grant.

TOM GLAZE, Justice, dissenting. I join in Justice Annabèlle Clinton Imber's opinion, but I write to amplify why Judge Keith should recuse and absent himself from trying a case in which he and his family have a pecuniary interest.

In writing on this recusal issue, I must first point out that this court says it asked the *parties* to submit briefs addressing five issues, including whether petitioners waived their right to ask Judge Keith to recuse. I will first point to the obvious errors in our court's request for briefs — first, the county and the school districts never intervened in this case, so they are not parties to this action. Moreover, Judge Keith, who is a party in this case, never raised any waiver issue at trial or in the initial petition for writ of mandamus. In fact, in petitioner Worth's first brief in this mandamus case, *Worth v. Keith*, No. 01-1409, Judge Keith *never filed any brief* in response to Worth's original petition for writ of mandamus; in the companion case, *Worth v. City of Rogers*, No. 01-1048, appellees filed a brief, but never mentioned any waiver issue. It was only our court that raised a waiver issue by requesting the opposing "parties" to brief whether the petitioners, Worth and the taxpayers, had waived any allegations bearing on the judge's disqualification. To make matters worse, this court's request was made *after* the mandamus case, No. 01-1409, had already been submitted for decision. *See Worth v. Keith*, 349 Ark. 731, 732, 79 S.W.3d 387 (2002). In fact, appellees and Judge Keith had already filed their appellate briefs in case No. 01-1048 without mentioning any waiver issue. It is clear that the judge and appellees never raised or mentioned any waiver question to this court *because it was not an issue at trial.*

Our court clearly erred in requesting that the "parties" brief any waiver issue since waiver was not developed by any party below in either case No. 01-1409 or No. 01-1048, nor did Judge Keith rule on such an issue.[1] Once again, this issue was not argued in any briefs filed on appeal until this court asked all parties to do so. In addition, our court compounded its error when, on its own initiative, it also instructed the Attorney General to file a brief on the waiver issue. *Id.* at 732. By taking these actions, our court substituted its judgment for that of the litigating parties, and it was wrong to do so. In short, no waiver issue was presented or preserved by the parties and this court is clearly wrong in considering the issue.

Next, I point out that, even if a waiver issue had been timely raised before the trial court, the record underscores that the respondents[2] never objected to the taxpayers' timeliness in moving for Judge Keith's recusal. In fact, at a February 22, 2001, hearing, Judge Keith informed the taxpayers that the judge owned real property in four of the respondents' taxing units that are involved in this suit, and, in response, the taxpayers' counsel notified Judge Keith that they might file a motion for him to disqualify. Judge Keith ruled that the taxpayers had until June 1, 2001, to file a motion for the judge to recuse. That was what happened, and, on June 7, 2001, the judge and counsel for the parties argued the *merits* of the taxpayers' motion for Judge Keith to recuse. While Benton County's counsel made the comment to Judge Keith that it was somewhat unusual for him to wait for this juncture in the proceeding to ask for the judge's recusal, counsel never objected,

---

[1] There is apparently some disagreement regarding whether or not the waiver issue was raised or ruled upon. Therefore, attached as an exhibit to this dissent is a copy of the relevant part of the abstract of the hearing on Worth's motion to recuse. It was on the basis of this record that I determined that the waiver issue or objection was neither raised nor ruled upon.

[2] For our purposes in writing this opinion, the term "respondents" in this instance refers to Benton County, the City of Rogers, and the school districts. We have some difficulty in appropriately describing the role of these parties in this particular proceeding, because the original petition for writ of mandamus involved only Worth and Judge Keith; Benton County and the other parties were not brought into this case until this court sought briefs from them. These parties, besides Judge Keith and Worth, have not formally intervened or been made parties to this case, No. 01-1409.

nor did Judge Keith rule on any waiver issue. Instead, Judge Keith went to the merits of the taxpayers' recusal motion and denied it.

At a preliminary hearing on the certification motion, held on February 22, 2001, Worth first raised the issue of Judge Keith's disqualification, contending that, even if the judge chose to opt out of the class action so as to avoid any tax refund, Keith would still be a beneficiary of a rollback, in the event one was ordered. The judge acknowledged the issue, but declined to rule on the question at that time. Instead, he gave the attorneys some time to consult with their clients and to brief the issue.

As previously mentioned above, a second hearing was held on June 7, 2001. At that time, Worth and the other taxpayers formally filed a motion asking the judge to recuse, asserting that once the court ruled that it would certify the lawsuit as a class action, it would be at that point that the judge must consider whether he had an interest that would disqualify him. *Judge Keith conceded that*, in such a class action, *he technically would be a party to the suit because he owned real estate in the county*. However, the judge said that, in order to avoid being a party and having a pecuniary interest in any possible tax refunds that might be ordered, he would opt out as a class member. The judge further acknowledged that his wife, father, and son owned property in the county and that his son's ownership involved a partnership interest that he assumed was substantial. Nevertheless, the judge expressed his belief that his own interest was *de minimis* and that he could hear the case fairly.

Taxpayer Worth responded that, even if the judge chose to opt out and declined to claim any possible refund, he would still benefit from the possible rollback of millage rates. Worth also argued that, because the suit was an illegal exaction action under Article 16, § 13 of the Arkansas Constitution, the suit was a class action as a matter or law, and thus the petitioners would represent all taxpayers who owned property, even if the judge ruled that those taxpayers — including the judge — could choose to opt out. Further, Worth contended that, by opting out of the class action, the judge effectively would align himself with the defendants, who have made a concerted effort to solicit opt-outs in the

class action. Finally, Worth submitted that, in opting out, the judge exhibited more than merely an appearance of impropriety or a conflict of interest.

The trial court denied the motion to recuse, and ultimately granted the class-certification motion on June 22, 2001, defining the class as "all persons and entities paying real or personal property *ad valorem* tax for the years 1990 through 2000 and thereafter, until this suit is finally decided in the taxing units so named in this suit, in Benton County." In the order certifying a class, the trial court specified that the notice sent out to all class members should have an opt-out provision. Following the trial court's decision, Worth brought the present petition for writ of mandamus, or in the alternative, writ of prohibition, arguing that the judge is a party litigant with a pecuniary interest in the outcome of the litigation who, as such, is without jurisdiction to preside.

Article 7, § 20, of the Arkansas Constitution commands that "[n]o judge or justice shall preside in the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by consanguinity or affinity, within such degree as may be prescribed by law[.]" Similarly, Ark. Code Ann. § 16-13-214 (Repl. 1999), states that "[n]o judge of the circuit court shall sit on the determination of any cause or proceeding in which he is interested, related to either party within the fourth degree of consanguinity or affinity, or has ·been of counsel, without consent of the parties."

The Code of Judicial Conduct also speaks to the issue of a judge's interest in a case before him or her. Canon 3E(1)(c) provides the following:

> A judge *shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge knows that he or she . . . has an economic interest in the subject matter in controversy . . . or has any other more than *de minimis* interest that could be substantially affected by the proceeding.[3]

---

[3] *See also* Ark. Const. amend. 80, § 12.

(Emphasis added.) The interest that is disqualifying under these provisions is a personal proprietary or pecuniary interest or one affecting the individual rights of the judge. *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996). To be disqualifying, the prospective liability, gain, or relief to the judge must turn on the outcome of the suit. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998).

While our court has never before addressed the specific question of a trial judge's recusal in an illegal-exaction class action suit, a number of treatises offer guidelines that help determine when disqualification is appropriate. Generally, "once a person dons the judicial robe, he should generally abstain from taking part in any judicial act in which his personal interests are involved." Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges*, § 7.1, at 201 (1996). Flamm further discusses a judge's interest in a class action as follows:

> The question of whether a judge is a "party" for judicial disqualification purposes may be most difficult to answer in those situations in which the judge is alleged to have an interest in a class action suit. Because in class actions the full membership of the class may not be known until the litigation is far advanced, class members are often treated differently than "parties" in a traditional lawsuit.
>
> \* \* \* \*
>
> *Whether judicial disqualification is appropriate in a particular class action case may . . . depend on whether the judge is a member of a class that has actually been declared or merely one in which certification may be considered* in the future — that is, whether the interests of the judge or his close family members are potential rather than actual.

*Id.*, § 7.3.2. at 206-07. (Emphasis added.) In the present case, Judge Keith and his family, under the court's majority opinion, indisputably have an actual pecuniary interest at stake.

Another commentator takes an even stricter view, writing that a judge must disqualify when he is a party to a suit, because "the appearance of impartiality, not to mention the reality, is abrogated." Jeffrey M. Shaman, *et al.*, *Judicial Conduct and Ethics*, § 4.14, at 135 (3d ed. 2000). With respect to the judge's partici-

pation as a member of a class in a class-action suit, Shaman states as follows:

> There remains the issue of whether a judge should be disqualified from class actions in which he or she is a member of a party-class. The rule seems to state that a judge is required to disqualify himself or herself only if the party-class is certified. However, if a possibility exists that a class will be certified, and the presiding judge will be a member of the class, the appearance of partiality may arise in the pleading stage where the existence of the class is alleged. Therefore, the judge should be disqualified from presiding in preliminary matters.

*Id.* at 136.

In an illegal-exaction case, our common law makes such a suit a class action as a matter of law. *Frank v. Barker*, 341 Ark. 577, 20 S.W.3d 293 (2000) (citing *Carson v. Weiss*, 333 Ark. 561, 972 S.W.2d 933 (1998)). The class is comprised of all taxpayers within the taxing unit. *Id.* at 583. Further, all members of the class share a common interest in the fair and uniform distribution of any rollback by a uniform reduction in the rate of taxation throughout the taxing unit. *Id.* Here, Judge Keith is a resident of Benton County, and he admitted he owns real property in respondents' taxing units of Rogers School District, Bentonville School District, and the cities of Bentonville and Rogers. Unquestionably, he has a pecuniary interest in the distribution of any rollback that may result from the case, aside and apart from any potential tax refund, from which he declared he would opt-out.

These facts bring me to the first two of my concerns with Judge Keith's continuing to preside over this case. First, because he owns property in Benton County and the other taxing units, he is by definition a class member in this illegal-exaction suit. It is "well-settled that a judge is disqualified to preside over a case in which he or she has a financial or property interest that could be affected by the outcome of the case." Shaman, § 4.20, at 148-49; *see also Sturgis, supra; Mears v. Hall*, 263 Ark. 827, 569 S.W.2d 91 (1987). As already noted, if the judge concludes that a rollback of the millage rates in Benton County is appropriate, then he will benefit from that tax relief along with all other taxpayers in the county. Second, our court has been placed in the position to con-

sider what would happen in the event it reversed the judge's ruling with respect to the opt-out provision in the class certification. Of course, that is what has occurred in case No. 01-1048, and the judge, along with all other Benton County taxpayers, have lost their ability to opt-out, and the judge necessarily remains a class member. Here, when he previously ruled that members could opt out, it made him *appear* that he had a predilection to rule in favor of allowing members to opt out. In addition, as Worth asserts, the judge, in adding the opt-out choices, aligned himself with the defendants, who have actively encouraged class members to opt out.

Additionally, I again emphasize the facts here that several of the judge's family members own property in Benton County, which causes them to be class members. At the hearing on Worth's recusal motion, Judge Keith stated that his wife, his father, and his son all own property in the county that would be subject to the refund and rollback elements of the lawsuit; his son's ownership interests, he noted, were "substantial." Our statutes and constitution provide that a judge may not preside in a case in which he is related to a party within the fourth degree of consanguinity or affinity. *See* Ark. Code Ann. § 16-13-214; Ark. Const., art. 7, § 20. Likewise, Canon 3E(1)(c) of the Code of Judicial Conduct states that a judge "shall disqualify himself" *when he knows* that he or she, or the judge's spouse, parent or child "has an economic interest in the subject matter in controversy." (Emphasis added.)

In addition, I point out that the majority opinion reads that Judge Keith should be able to preside over this litigation because his interest is no more than that of an ordinary citizen or taxpayer. The majority first cites *Nowlin v. Kreis*, 213 Ark. 1027, 214 S.W.2d 221 (1948). The *Nowlin* decision has no application to this case. There, a county judge approved petitions for a local option election, when he and his relatives had signed the petitions. The county judge did not have a pecuniary interest involved in that case, nor did his relatives. Moreover, the *Nowlin* court *refused* to decide whether the county judge should have presided when approving the petitions because the persons protesting the local option election had waived the alleged disqualification of the

county judge.[4] And, finally, the majority opinion cites to the case of *Huffman v. Judical Disc. and Disab. Comm'n*, 344 Ark. 274, 43 S.W.3d 386 (2001), but that decision is assuredly authority for Judge Keith's recusal.

In *Huffman*, this court held as follows:

> [W]here a judge and his or her spouse have an economic interest [as] a party litigant, the first question the judge should consider is whether that economic interest would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. *The judge should disclose on the record the judge's and his or her spouse's economic interest in the party litigant. If the answer to the question is "yes," the judge should recuse, and one need not consider whether the economic interest in the party litigant was de minimis or not.*

*Huffman*, 344 Ark. at 283 (emphasis added). The *Huffman* court wrote further that it did not matter that the judge's economic interest in the case was *de minimis*, because the perception existed that the judge's impartiality could be questioned. *Id.* at 284.

In the present case, for the reasons discussed above, it is apparent that Judge Keith's and his family's interest as party litigants could create in reasonable minds a question regarding his ability to carry out his judicial responsibilities with integrity and impartiality. It was the judge's duty, not Worth's, to disclose his interest, and he waited to do so until February 22, 2001. Once Judge Keith's disqualification was established, the taxpayers were entitled to a writ of mandamus prohibiting the judge from proceeding further. *See Hobson v. Cummings*, 259 Ark. 717, 536 S.W.2d 132 (1976); *Copeland v. Huff*, 222 Ark. 420, 261 S.W.2d 2 (1953); *see also Black v. Cockrill*, 239 Ark. 367, 389 S.W.2d 881 (1965).

In conclusion, I further note that the majority opinion suggests that, if Judge Keith disqualifies, then all other judges will

---

[4] The majority also cites *Noland v. Noland*, 326 Ark. 617, 932 S.W.2d 341 (1996), but that case in no way applies because the judge there had no pecuniary interest involved in the divorce contest.

have to do so because, as taxpayers, this litigation will have a state-wide impact and will affect any circuit judge assigned to try this case. Of course, this suggestion is spurious because the type of taxpayer litigation involved here, challenges county-wide reassessments and appraisals under Amendment 59, as is best described in *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000). Suffice it to say that when a circuit judge is disqualified to serve in a county-wide tax dispute, Amendment 80, § 13, to the Arkansas Constitution empowers this court's chief justice with the authority to assign a special judge from another county and district who has no financial interest, like Judge Keith and his family have here.

For the reasons given above, I would grant the writ of mandamus requested by Worth and the taxpayers.

IMBER, J., joins this dissent.

## EXHIBIT 1

### TRANSCRIPT OF MOTION HEARING
### JUNE 7, 2001
### (Cert. Record p. 33-91)

THE COURT: All right, *Worth v. Benton County, et al, City of Rogers, et al*. It seems that the first motion before the court we'll deal with is the motion to recuse. It's the plaintiffs' motion for the court to recuse. What is the position of the defendants on this matter?

MR. MATTHEWS: Your Honor, we did not file anything, but I would say for the record, we believe that the question of whether or not the court should recuse is a matter within the sound discretion of the court and you should consider what your personal circumstances are and whether or not you would be biased. We do not desire your recusal. But we have no objection to you staying on this case. This case has been pending for approximately four years and you have made a number of rulings. One of them has been an appeal to the Supreme Court and reversed, somewhat unusual (Cert. Record p. 36) for me that we wait until this juncture in the proceeding to ask for your recusal.

MR. CLARK: Your Honor, I believe Benton County and the City of Rogers have filed a response in which we specifically oppose your recusal. We think you ought to stay on the case. There's absolutely no conflict of interest pointed out by Mr. Evans that would require your recusal or any appearance of impropriety. We request that you stay on the case.

MR. EVANS: I'm not aware that the City of Rogers filed a response.

THE COURT: I haven't either. That makes two of us.

MR. EVANS: As for the timing issue, Your Honor, I guess the real issue of timing should be, once the lawsuit is filed, if the court should decide that it is or is not a class proceeding, that it would affect the court's interest in the subject matter, then it's really not appropriate. (Cert. Record p. 37)

In this particular case, once it becomes clear the court was going to certify and make the subject matter one that encompassed the entire county, it's at that point that the court's interest, should the court have an interest, become one to be considered. The issue was addressed back in February when Mr. Matthews asked the question in chambers and then dealt with it on the record. The court, at that point, said that we were going to question that we should have until June to file the proceeding. The court indicated that the court did own an interest in two of the defendants' jurisdictions, and we were unaware of all the specifics at that point. Until we really studied the issue and started looking at it and did some research, it takes some time to really formulate as to whether or not this is a concern. (Cert. Record p. 38) After we read those cases, we went back and found the cases we were unaware of, but we read them and realized, wait a minute, this is an issue that has some complication. Back in February we indicated we had some trouble with the fact that the court had indicated to us he might chose to opt-out of this particular case. I don't think there's been any waiver or any timing issue. (Cert. Record p. 39) Through the research, I was under a mistaken impression that somehow it did make a difference whether the amount was significant and we found some cases that say that. But the real issue in this particular case is not how much or how valua-

ble — it's a decision that the court would face in having to make about its own interest. We've cited cases for the court that the amount was irrelevant if the court becomes a party to the action. When the court makes it a class, the court becomes part of the class and we frequently refer to the old argument of de minimis or value to the extent of the interest is not really the issue at all.

THE COURT: To that regard, Mr. Evans, I think that was the discussion that prompted the court saying and more out of concern of the defendants, really, than anyone else that the court technically would become a party by owning real estate in this county. And that if the court would opt-out, not as a statement as to the merits of opting out for anyone else but to clarify (Cert. Record p. 40) that the court is not a party or being a member of the class.

ANNABELLE CLINTON IMBER, Justice, dissenting. I join in Justice Tom Glaze's dissenting opinion, but write to emphasize that the judge himself concluded he had a disqualifying interest in this case. The trial judge not only acknowledged that he owned property on which he had paid the taxes at issue, but he also acknowledged that his relatives had substantial holdings in the county that would be affected by the case. To cure this conflict, he concluded that he needed to opt out of the class in this illegal-exaction lawsuit. The trial judge then proceeded to decide, albeit erroneously, that he and other similarly situated taxpayers should be afforded an opportunity to opt out of the class. Regardless of whether the judge's interest actually required his disqualification, the judge's actions indicate that he considered his and his family's interests in the case to be a disqualifying impairment. Once a judge concludes that he or she has a disqualifying interest in a case, it is incumbent upon the judge to recuse. *Huffman v. Arkansas Judicial Discpline & Disability Comm'n*, 344 Ark. 274, 42 S.W.3d 386 (2001).[1] A petition for writ of mandamus will not lie to compel a performance of a duty that is discretionary; however, where a judge is ineligible to preside, the judge's withdrawal becomes ministerial and mandamus is the proper remedy. *Copeland v. Huff*, 222 Ark 420, 261 S.W.2d 2 (1953). Here, the judge disqualified

---

[1] Under these circumstances, the issue of waiver is not relevant.

himself by attempting to opt out. Because he cannot opt out of the constitutionally-created class, he is ineligible to preside. Therefore, I respectfully dissent and would grant the writ of mandamus.

GLAZE, J., joins in this opinion.