Cite as 2023 Ark. App. 546

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-23-256

|  |  |
|---|---|
| RHONDA PARK AND JAMES PARK<br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | Opinion Delivered November 29, 2023<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. 71JV-21-22]<br><br>HONORABLE SUSAN WEAVER, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

This appeal arises from a Van Buren County Circuit Court's denial of biological relatives' petitions for guardianship and for adoption of a minor child (MC) after parental rights to the child were terminated. MC's great-aunt and great-uncle, Rhonda and James Park, challenge the court's denial of their petitions, the court's grant of the foster parents' petition to adopt, and the court's failure to recuse itself. We affirm.

To fully understand the arguments on appeal, a brief overview of the underlying dependency-neglect proceedings is necessary.

In August 2021, the Arkansas Department of Human Services (Department) was notified that MC's mother had tested positive for amphetamines at MC's birth. MC's mother also admitted she was homeless. As a result, the Department exercised a seventy-two-

hour hold on MC due "to parental unfitness as a result of illegal drug use, Garrett's Law, and [her] mother's pattern of homelessness and overall stability."[1] MC's mother subsequently stipulated to a finding of dependency-neglect, and the court set the goal of the case as reunification with a fit and appropriate parent. As part of the case plan, the court ordered the Department to provide four hours of supervised visitation each week.

A review hearing was held in January 2022, after which the court entered an order[2] finding that, although MC's mother had less than partially complied with the case plan and court orders, the goal of the case would continue to be reunification but with a concurrent goal of adoption. The court noted in the order that the Department had completed an Interstate Compact on the Placement of Children (ICPC) package on the Parks, who live in Florida. At the time of the review hearing, MC remained in provisional foster care in Arkansas, and visitation between the parents and MC was being provided to support reunification efforts. The Parks' ICPC home study had been approved prior to the hearing, but the results were not mailed to the Department until shortly thereafter.

---

[1]At the time of removal, the Department indicated that it would contact MC's maternal grandmother, who had guardianship over MC's siblings, and a paternal aunt to see if either would be an appropriate relative placement option. The grandmother indicated that she could not care for an additional child and was therefore not an appropriate placement. The record is silent as to potential placement with the paternal aunt. The Parks had yet to be identified as a possible placement. As a result, MC was placed in provisional foster care.

[2]The January 21, 2022 review order filed after the hearing erroneously stated that the review hearing had been held on October 6, 2021. That order was later amended on February 22, 2022, to reflect the correct hearing date.

On March 18, 2022, the Department filed a motion for ICPC placement of MC with the Parks in Florida. In its motion, the Department stated that relatives are given preferential treatment in the placement of juveniles in dependency-neglect actions and asserted that it was in MC's best interest that she be placed with the Parks. The Department noted that the goal of the case was reunification with a concurrent goal of adoption; that the mother was less than partially compliant with the case plan; and that the father was only partially compliant. The attorney ad litem (AAL) concurred with the Department's request to grant an ICPC placement with the Parks.

A combined review hearing and a hearing on the motion for ICPC placement was held on May 16, 2022. Parent counsel objected to MC's being placed with the Parks in Florida because, among other things, it would be difficult to provide the parents visitation if MC were in Florida. After the hearing, the court reiterated that the goal of the case was reunification with a fit and appropriate parent and denied the ICPC placement with the Parks. In doing so, the court found that, while MC's mother was only minimally compliant with the case plan, she was attending visitation and had completed the parenting assessment. The court also found that MC's father was in compliance with the case plan and noted, in part, that he was working, attending visitation, and had completed the parenting assessment.

A permanency-planning hearing was held on August 3, 2022, after which the court found that both parents had only minimally complied with the case plan and changed the goal of the case to guardianship with a fit and willing relative together with a concurrent goal

of adoption after termination of parental rights.[3] Despite the goal change, the court continued the parents' right to visitation with MC. The court set October 5, 2022, as the date for the termination hearing.

On August 11, 2022, the foster parents, who had had custody of MC since her removal, filed a motion seeking leave to intervene in the dependency-neglect case for purposes of filing a guardianship petition. The attorney ad litem filed a response requesting that the court deny the motion to intervene as premature given the current stage of the dependency-neglect proceedings.

A week later, the Department filed a petition for termination of parental rights followed by adoption and noted that the hearing on the petition was set for October 5, 2022.

The day before the termination hearing, the Parks filed a petition to be appointed the permanent guardians of MC. They noted that their ICPC home study had been approved, but placement had not yet been made. That same day, the Department filed a motion for continuance of the termination hearing to allow it more time to consider MC's permanency options and to respond to the Parks' petition for guardianship.

At the beginning of the termination hearing, the court asked whether the foster parents' motion to intervene was being considered. Counsel for the foster parents responded that they would be seeking to adopt MC and thus needed to amend their pleading requesting

---

[3]The order itself was not filed until the day before the termination hearing (October 4, 2022).

intervention. The AAL and the Department requested a hearing on the motion, and the parties agreed that a hearing date would be set at the conclusion of the termination hearing.

The Department then requested that, prior to the commencement of the termination hearing, it be allowed to dismiss its termination petition so that it could consider the competing guardianship petitions. The court denied the Department's motion to dismiss, finding it untimely.

The case then went forward on the petition to terminate. After the hearing, the court filed an order terminating parental rights and changing the permanency plan for MC to adoption. The termination order set the hearing on the foster parents' motion to intervene and petition for adoption for November 17, 2022.

On October 12, 2022, the Parks filed a petition to adopt MC, claiming that it was in MC's best interest to be placed with biological relatives and that Arkansas law required that relative placement be considered at all stages of the case. Two days later, the foster parents filed an amended motion for leave to intervene to file an adoption petition, which the court granted. Their adoption petition was filed of record on October 19, 2022, and their adoptive home study was approved on November 7, 2022.

The Parks, on the other hand, did not file their motion to intervene until October 19, the same day the foster parents filed their adoption petition. The Parks sought leave to intervene for purposes of establishing a permanent guardianship as to MC or, in the alternative, to adopt her.

On November 14—three days before the scheduled hearing on the motions to intervene and related petitions—the Parks moved to continue, citing their counsel's conflict with the November 17 court date. They claimed they had only recently discovered the hearing date, that they needed to travel out of state, and that they would have to make last-minute adjustments to their schedule to attend a hearing where their counsel would not be available.

The court denied the continuance motion. In doing so, it noted that the Parks had been present at the termination hearing on the day the hearing was set, as was their counsel. The court stated that counsel was aware that a date for the intervenor-adoption hearing would be set upon the conclusion of the termination-of-parental-rights hearing but opted to leave before the hearing date was set. In any event, the Parks were present when the November 17, 2022 hearing was set and thus had actual notice of the hearing date. Moreover, the court found the Parks lacked standing to request a continuance because their motion to intervene had not yet been granted.

On the morning of the termination hearing, the Parks moved to disqualify the circuit judge, claiming that she had consistently disregarded Arkansas law with respect to the relative-placement preference and that she had improperly denied the Department's request to dismiss the termination petition so that it could consider relative placement and proceeded with termination. The Parks asserted the court had indicated a bias and or prejudice against them through its various statements and comments and further pointed to the dismissal of their continuance motion as evidence that the circuit judge should recuse

6

herself. The Parks maintained that, as a result of the foregoing, the court's impartiality had been called into question, thereby requiring her recusal.

The motion to disqualify was considered at the November 17 hearing. Despite having previously claimed a conflict with the hearing date, the Parks' counsel was present at the hearing. After the hearing, the court granted the Parks' motion to intervene but denied their motion to disqualify.

The hearing on the competing petitions for adoption was held on January 18, 2023. After the hearing, the court entered an order granting the foster family's adoption petition and denying the Parks' competing petition. In doing so, the court recognized that the Parks' ICPC had been approved and that they had reached out to the Department multiple times during the dependency-neglect proceedings in an attempt to establish a relationship with MC and to be involved in the case. The court noted that it had considered ICPC placement on two separate occasions but had denied the requests after MC's biological parents and their attorneys had been adamant that MC not be sent to Florida to live with the Parks because doing so would impede their reunification efforts. The court stated that both sets of petitioners are wonderful and outstanding people but that MC's tremendous bond with the foster family and her lack of familial relationship or attachment with the Parks—the child had spent only a few hours with the Parks—were the most relevant factors in its decision to grant the foster family's adoption petition. The court also considered the age of the parties; the distance between the Parks' home in Florida and the remaining biological family in Arkansas; the foster family's expressed interest in encouraging a relationship between MC

and her biological family, including visitation with her siblings and the Parks; and, although relative placement was no longer a preference, the biological connection between the Parks and MC. For these reasons, the court found that it was in MC's best interest that the adoption petition of the foster family be granted.

The Parks have appealed, challenging the court's denial of their guardianship and adoption petitions and the court's failure to recuse itself.

I. *Denial of Motion to Recuse*

For their first point of appeal, the Parks argue that the circuit court erred in denying their motion to disqualify or recuse. A circuit court's order denying a motion to recuse is reviewed under an abuse-of-discretion standard. *See Shaffer v. State*, 2018 Ark. App. 581, at 4, 566 S.W.3d 522, 524. "A trial judge is presumed to be impartial, and a party seeking disqualification bears a substantial burden to prove otherwise." *Ahmad v. Horizon Pain, Inc.*, 2014 Ark. App. 531, at 5, 444 S.W.3d 412, 416. "The party seeking recusal must demonstrate bias," which must be shown objectively or by a "communication of bias." *Parkerson v. Brown*, 2013 Ark. App. 718, at 8, 430 S.W.3d 864, 871. There is an affirmative duty not to recuse where no conflict exists. *See Worth v. Benton Cnty. Cir. Ct.*, 351 Ark. 149, 156, 89 S.W.3d 891, 896 (2002).

The Parks moved to disqualify the circuit judge below because she refused to place the child in their care despite an approved ICPC home study and despite statutory authority as to the preferential status of relative placement. They then outlined several instances in which they believed the circuit judge revealed her bias: (1) the interaction between the court

and counsel for the foster parents at the termination hearing; (2) the court's subsequent failure to acknowledge their counsel's presence on the record at that hearing; (3) the court's "redress and frustration" at the Department's apparent desire to dismiss the termination petition so it could pursue a potential guardianship with the Parks; (4) the court's denial of the motion to continue so that the Department could pursue the guardianship option; and (5) the court's use of the words "pissing match" to describe an exchange it had with the Department and the AAL during the proceedings.[4] They comment that this latter incident was on the record, in open court, in a hearing in which nonparties were not excluded, and it belied the appearance of fairness. They further note that the court even referenced the director of the Judicial Discipline and Disability Commission (JDDC) and apologized to him and not the participants in the room. They additionally argue that the court's characterization of counsel's arguments in support of their motion for continuance as "disingenuous" and a "misrepresentation" and its suggestion that it might hold the hearing in their absence called into question the court's impartiality and appearance of fairness.

As stated above, we first start with the principle that judicial impartiality is presumed, and adverse rulings are not enough to demonstrate bias. *Clowers v. Edwards*, 2020 Ark. 367;

---

[4]During cross-examination of the social worker, the AAL began to question the social worker regarding the Department's duty to locate relatives for placement during the dependency-neglect proceedings. Parent counsel objected on relevance grounds and therein began a back and forth between the court and the AAL regarding the relevance of the relative-placement statute at a termination hearing. The court then stated, "Because I feel like, and this is probably going to be lack of a better – probably going to get in trouble for saying this, but I feel like what we've got going on in here is a pissing match."

*Taffner v. Ark. Dep't of Hum. Servs.*, 2016 Ark. 231, at 14, 493 S.W.3d 319, 329. A party seeking disqualification bears a substantial burden to overcome that presumption. *Ark. Jud. Discipline & Disability Comm'n v. Proctor*, 2010 Ark. 38, 60 S.W.3d 61; *Owens v. State*, 354 Ark. 644, 128 S.W.3d 445 (2003). To decide whether there has been an abuse of discretion, the appellate courts will review the record to determine if prejudice or bias was exhibited. *Owens*, 354 Ark. 644, 128 S.W.3d 445.

Upon review of the record in this case, we find that the Parks have failed to overcome that presumption. There is nothing in our record to indicate that the circuit court's failure to consider guardianship or its denial of the Department's motion to continue were the result of any bias or prejudice against the Parks; these were simply adverse decisions based on the record before the court at the time the decisions were made. Moreover, at the time of these decisions, the Parks were not even parties in the dependency-neglect proceedings.

Nor do the remaining allegations rise to the level of bias so as to require recusal. The fact that the circuit judge and counsel for the foster parents engaged in a polite and friendly exchange prior to a hearing in which the Parks' counsel was present but not addressed by the court does not overcome a presumption of impartiality. The hearing at issue was, in part, a hearing on the foster parents' motion to intervene prior to termination. Thus, collegial interaction between the court and counsel is nothing extraordinary. And, while the Parks had filed their petition for guardianship the day before, they had not yet filed a motion to intervene and were not recognized parties to the action at that point. Thus, the court's failure to formally acknowledge the Parks' counsel is not any clear indication of bias.

10

As for the alleged "pissing match" comments and the apology to the "JDDC," these also fail to demonstrate any bias. The "pissing match" reference involved a disagreement between the court, parent counsel, and the AAL over the relevance of relative placement in a termination hearing. After much back and forth, the court stated that the parties needed to move on as this was just a "pissing match." The circuit judge then jokingly apologized to the head of the JDDC for her somewhat inappropriate language. When viewed in this context, there does not appear to be any indication of bias, especially given the fact that the Parks were not parties at the termination hearing.

As for the Parks' claims that the circuit court further revealed its bias when it (1) denied their motion to continue the November 17 hearing date, referring to their arguments as "disingenuous" and a "misrepresentation," and (2) indicated its intent to proceed with the hearing on the competing adoption petitions without them, their claims are again not well-taken. Counsel, in her motion to continue, claimed that she had no notice of the proposed hearing and that she had previously advised the court's clerk of her apparent conflict with the November 17 hearing date. The court in its order denying the motion to continue simply clarified that counsel was aware that the hearing date would be set after the termination hearing; that, while counsel opted to leave the hearing prior to the scheduling, her clients were present when the hearing was scheduled for November 17; and that counsel had objected to the November 17 date on October 5, thereby contradicting her claim that she was not put on notice of the date the hearing was set. As a result, the court concluded that counsel's claim that she had no notice of the hearing was "disingenuous" and a

11

"misrepresentation" of the circumstances surrounding the trial setting. Such a conclusion was not clearly erroneous under the circumstances and does not reflect bias on the part of the circuit court.

Finally, it is apparent on our record that the circuit court's ultimate decisions regarding guardianship and adoption were not based on any prejudice or animus against the Parks or the Department, nor did the court exhibit any sort of bias in favor of the foster family. The court allowed both parties to proceed with their respective adoption petitions and appeared to have decided the issues solely on the basis of what it determined was in the best interest of the child. Thus, the court did not abuse its discretion in denying the motion to recuse.

II. *Dismissal of Petition for Guardianship*

The Parks next argue that the circuit court erred in denying the guardianship petition they filed prior to the termination hearing. They note that, at the permanency-planning hearing, the circuit court changed the primary goal of the case to guardianship; that they had previously received ICPC approval; and that the Department and the AAL had previously requested they be considered as a potential placement. They claim that, as a result, termination of parental rights was not necessary and that their guardianship petition should have been considered. However, we note that the Parks were not parties to the dependency-neglect proceedings at the time of the termination hearing, and they did not seek

intervention until after termination was granted.[5] Thus, they lacked standing to challenge the circuit court's termination decision, and they have not explained on what basis standing exists for such a challenge under these circumstances. Moreover, from our record, it does not appear that the parents, who clearly had standing to appeal the termination decision, ever appealed the termination decision or timely challenged the Department's failure to place MC with a relative prior to termination.[6] Thus, the circuit court's determination that termination was in the best interest of the child stands, and the court's dismissal of the Parks' petition for guardianship is affirmed.

---

[5]We also note that the court granted the Parks' request to intervene only for the purpose of filing their adoption petition, not for the purpose of filing the guardianship petition. However, the court in its final order acknowledged that both parties had filed guardianship petitions, but because the petitions were not considered by the court, they were therefore dismissed.

[6]Case law from this court holds that a circuit court is permitted to set termination as a goal even when a relative is available and requests custody. This is because the Juvenile Code lists permanency goals in order of preference, prioritizing a plan for termination and adoption unless the juvenile is already being cared for by a relative, the relative has made a long-term commitment to the child, and termination of parental rights is not in the child's best interest. *Dominguez v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 2, 592 S.W.3d 723; *Otis v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 28, 538 S.W.3d 870.

III. *Denial of Adoption Petition*

For their final point on appeal, the Parks, relying on *Ellis v. Arkansas Department of Human Services*, 2016 Ark. 441, 505 S.W.3d 678, maintain that the circuit court erred in granting the foster family's adoption petition because the court failed to properly consider relative placement at every stage of the dependency-neglect proceedings. They claim that the circuit court was compelled by statute to place MC with approved relatives, yet it failed to do so. They further assert that this failure resulted in MC's having a stronger attachment to the foster family and that such bond was then relied on by the court to grant the adoption petition. Therefore, the adoption decree should be reversed, and the case remanded for the court to reconsider in light of the statutory preference for relative placement. We disagree.

A circuit court may grant a petition for adoption if it determines at the conclusion of a hearing that the required consents have been obtained or excused and that the adoption is in the best interest of the child. *Canerday-Banks v. Barton*, 2018 Ark. App. 523; *Cowan v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 576, 424 S.W.3d 318. The Parks do not challenge either of these requirements on appeal. Instead, their focus is on the circuit court's failure to consider relative placement prior to termination. However, unlike the relatives in *Ellis*, the Parks did not seek to intervene in the dependency-neglect proceedings where the relative-placement determinations were made until after termination. Following a termination of parental rights, relatives are no longer given preference over foster parents. *Suster v. Ark. Dep't of Hum. Servs.*, 314 Ark. 92, 858 S.W.2d 122 (1993); *Clark v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 223, 575 S.W.3d 578; *Davis-Lewallen v. Clegg*, 2010 Ark. App. 627, 378 S.W.3d

14

185; *see also Canerday-Banks*, 2018 Ark. App. 523, at 10 n.7 ("[O]ur supreme court has made clear that a biological grandparent's status as a 'relative' terminates when his or her child's parental rights are terminated."). Thus, their claims that they were entitled to relative preference during the adoption proceedings are incorrect. Moreover, as the appellees note in their brief, the current appeal is only from the circuit court's determination with regard to the adoption petitions, not from the termination petition. Thus, their arguments in this respect are not properly before us. *See Cowan v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 576, 424 S.W.3d 318 (finding that arguments related to the circuit court's decision to deny appellants' motion to intervene and from the court's permanency-planning order were not properly before this court in an appeal from the denial of the appellants' adoption petition).

Finally, the court in its order granting the foster family's adoption petition and denying the Parks' competing petition specifically stated that it had considered the fact that the Parks are still MC's biological relatives despite the termination of parental rights. Unfortunately for the Parks, it determined that relative placement could not take precedence over the best interest of the juvenile. The circuit court determined that it was in MC's best interest to be adopted by her foster family with whom she had lived for almost the entirety of her young life and with whom she had developed a tremendous bond. We give great deference to the circuit court's personal observations when the welfare of a young child is involved because there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as one involving minor children. *Tom v. Cox*, 101 Ark. App. 388, 278 S.W.3d 110 (2008). Having given the

15

record our de novo review, we cannot say that the circuit court's finding in this regard was clearly erroneous.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

*Eden Law Firm*, by: *Kimberly Eden*, for appellants.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.