SLIP OPINION

Cite as 2016 Ark. App. 609

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-15-1019

| | |
|---|---|
| HELEN WILLIAMS, ALLEN PRIMM, AND BARBARA PRIMM<br><br>APPELLANTS<br><br>V.<br><br>DOUBLE S RANCH, LLC<br>APPELLEE | **Opinion Delivered:** December 14, 2016<br><br>APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. 06CV-13-54-2]<br><br>HONORABLE B. KENNETH JOHNSON, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

The parties in this case are adjoining property owners of unenclosed, unimproved land in Bradley County who share a common boundary line. The dispute between them involves a road that runs east and west along the entire length of that boundary line on the northern boundary of appellee's land and just south of the southern boundary of appellants' property. Appellants, Helen Williams, Barbara Primm, and Allen Primm, appeal from an order of the Bradley County Circuit Court denying their claims of prescriptive easement, adverse possession, and boundary by acquiescence. On appeal, appellants argue that the circuit court's findings are clearly erroneous. We affirm the circuit court's order.

Appellee, Double S Ranch, LLC, is owned by Stan and Linda Sweeney. The Sweeneys purchased their property—described as the Northwest Quarter of Section 27, Township 16 South, Range 12 West—in 1998 and settled record title of the property in appellee in 2000. Helen Williams and her (now deceased) husband, Earnest, acquired a partial interest in what

SLIP OPINION

is now her tract in 1954 and full ownership in 1978. Ms. Williams's tract is described as the Southeast Quarter of Section 22, Township 16 South, Range 12 West. Ms. Williams is Linda Sweeney's aunt; Barbara Primm is Ms. Williams's daughter and Linda Sweeney's first cousin; and Allen and Barbara are married. Surveys introduced by both parties indicate that the road in dispute is located entirely on appellee's property.

In 2009 or 2010, Mr. Sweeney erected a gate across the road. Several years later, Ms. Primm called Mr. Sweeney to express her disapproval of the gate, and they arranged a meeting to discuss the issue. In July 2012, Mr. Sweeney and Mr. Primm met at the site of the gate in an attempt to work out their differences but were unable to come to an agreement. A year later, in July or August of 2013, the Primms removed the gate and placed it on the side of the road approximately 1/4 mile east of its previous location, prompting appellee to initiate this lawsuit.

On August 29, 2013, appellee filed a complaint against appellants, alleging that the road was located entirely within the boundaries of its property, that appellants had removed a gate appellee had installed on the road, and that appellants may claim some interest in property owned by appellee. Appellee asked the court to quiet title in it to its legally described property, including the road, and to enjoin appellants from entering its property other than for access to Ms. Williams's property near the sign indicating the end of public road maintenance.

Appellants responded, claiming that Ms. Williams had acquired a prescriptive easement over the road for ingress and egress to her property; that she had adversely possessed property

north of a wire fence that runs parallel to the road; and that a boundary by acquiescence existed on appellee's property. Appellants then filed an amended counterclaim, clarifying that they had established a prescriptive easement in the road and claiming that the public had also established a public easement in the road due to county maintenance of the road and public passage over the road for more than fifty years.

On August 25, 2015, after a hearing, the court entered an order quieting title to all lands located in the Northwest Quarter of Section 27, Township 16 South, Range 12 West in appellee, subject to the public's right to use a certain portion of the road ending at a sign erected by Bradley County marking the end of public maintenance. The court permanently enjoined appellants from entering appellee's land except for the portion of the road maintained by Bradley County. Finally, the court specifically found that the boundary line between the parties was as set forth on both surveys. Appellants filed this appeal.

We review quiet-title and boundary-line actions de novo, but we will not reverse findings of fact unless they are clearly erroneous. *Lafferty v. Everett*, 2014 Ark. App. 332, at 3, 436 S.W.3d 479, 481. In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position to determine witness credibility and the weight to be accorded their testimony. *Steele v. Blankenship*, 2010 Ark. App. 86, at 10, 377 S.W.3d 293, 298.

## I. *Prescriptive Easement*

We turn first to appellants' argument regarding a prescriptive easement. They contend that the circuit court clearly erred in refusing to find either a public or private easement. In

SLIP OPINION

Arkansas, one asserting an easement by prescription must show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period—that is, seven years. *Owners Ass'n of Foxcroft Woods, Inc. v. Foxglen Assocs.*, 346 Ark. 354, 363, 57 S.W.3d 187, 193 (2001).

In support of their argument, appellants point to the following evidence. Ms. Williams testified that she was born in 1921; lived on property that abutted the subject road, to the east of her present parcel; and rode in wagons over the road coming and going to and from her homestead. Ms. Williams also testified that she had farmed and pastured the forty acres that she and her husband acquired in 1954, had traveled the road "maybe" two or three times a year, and had never asked for permission to do so.

Her daughter, Ms. Primm, testified that she was born in 1949 and remembered traveling the road with her parents to the lakes at the end of the road. She said no one had ever stopped them and they had never asked for permission. She also testified that she remembered loggers and drilling rigs using the road when she was young. She testified that she considered the road a public road and that she wanted to use the road to have free access to her mother's property.

Two other witnesses testified for appellants: Kent Measel and Johnny Waterfield. Mr. Measel testified that he was 62 years old and had traveled the road "probably 15 times" in the "'80s and '90s" to fish in the lakes at the end of the road. He said he had also seen others there. He said that no one had ever tried to stop him and that he had never sought permission to be there. Mr. Waterfield testified that he also was 62 years old and had used the road "10

or 12 times" when he was a kid with friends to "shoot turtles and snakes and that kind of stuff." He said no one had told them that they needed permission and he had also seen other people traveling the road.

In contrast, in denying appellants' claim to either a public or private prescriptive easement, the circuit court credited the following testimony. Lavern Rice testified that he had been the Bradley County Road Supervisor for 18 years, from 1977 through 1994, and the Bradley County Judge for 12 years thereafter. He said that during his 30-year history with the subject road, Bradley County had never maintained the road, except for the small portion that ended where the sign was placed, which states "End of County Maintenance." That sign is generally located at the northwest corner of appellee's property and the southwest corner of Ms. Williams's property. Keith Neeley, the county judge who replaced Mr. Rice in 2007, testified that there had been no county road maintenance on the road between the parties' properties and that the county maintenance ended at the sign.

The court specifically gave "considerable credibility" to the testimony of Donnie Williams, who is Linda Sweeney's brother, Ms. Williams's nephew, and Ms. Primm's first cousin. Mr. Williams testified that he was 70 years old and had leased Ms. Williams's 40-acre tract for years. He testified that he used the road in question on a weekly basis with appellee's permission. He said that the prior owner of the property had not given him permission to use the road and that he had used the access to Ms. Williams's property near the end of the county road maintenance at the southwest corner of her tract during that time. He testified that he had cleared the road of overhanging limbs and grass for years and that he had never

seen any county road equipment or other vehicles on the road, besides those of family members, in the past 25 years. He said that the road had been used in the 1960s for well drilling but that there had been virtually no traffic for the past 25 years. He testified that he had not seen appellants on the road until after the lawsuit had been filed.

The court specifically found that the evidence was not sufficient to support the creation of either a public or a private easement by prescription. The court recognized appellants' testimony regarding their use of the road but found that they had offered no evidence that was inconsistent with permissive use other than the acts that precipitated the litigation. The court noted that appellants offered no evidence at all of public or private maintenance of the road. The court concluded that the evidence presented of usage by appellants and the public was permissive and not such as would put the owners of unimproved and unenclosed land on notice of a claim of right. Based on our review of the record, we conclude that the circuit court's findings of fact on this issue were not clearly erroneous.

## II. *Adverse Possession*

Appellants also contend that the court clearly erred in finding that they had not established adverse possession of the "razor-thin slice" north of the road and just south of Ms. Williams's southern boundary line set forth in the surveys. They argue that testimony of each of the appellants established that historical access to Ms. Williams's property occurred all along this property and the road. They claim that "no one ever claimed ownership nor exercised control over the property north of the road except the Williams, since 1954."

Both parties' surveys clearly indicate that the road and this "razor-thin slice" of land

SLIP OPINION

north of the road lie entirely within the boundaries of appellee's legal description. Appellants had the burden to prove by a preponderance of the evidence that they had adversely possessed the property. In order to prove ownership of land by adverse possession, the party claiming possession must show continuous possession of the property for seven years. *Robertson v. Lees*, 87 Ark. App. 172, 183, 189 S.W.3d 463, 471 (2004). The claimant must also prove that possession was actual, open, notorious, continuous, hostile, exclusive, and accompanied by an intent to hold against the true owner. *Washington v. Washington*, 2013 Ark. App. 54, at 6, 425 S.W.3d 858, 862. In this case, the land had long been owned by various family members. Because the use of land by family members is presumed to be permissive, stronger evidence of adverse possession is required in cases involving family. *Id*. Mr. Sweeney testified that he told Mr. Primm during their meeting at the gate that if he had a reason to go through the gate, he would have access to the gate. Mr. Sweeney then wrote the combination to the gate on the back of the gate. He testified that the gate across the road was to keep people from dumping garbage and to keep four-wheelers off the property. It was not designed to keep family out.

Donnie Williams testified that there had been little traffic on the road other than family members. Although there was testimony that wire remnants from an old fence were visible in some places on this strip of land, the testimony indicated that this was to keep animals off of the crops. There was no testimony regarding who built the fence or that the fence had been maintained by appellants. The circuit court's finding that appellants failed to prove the elements of adverse possession is not clearly erroneous.

III. *Boundary by Acquiescence*

Finally, appellants argue that the middle of the road is the boundary line by acquiescence between the parties and that the circuit court clearly erred in denying this claim. Appellants cite no evidence from the record to support this position, and the circuit court specifically found that "there was virtually no proof presented at the trial addressing this issue." Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line, and in such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. *Id.* Appellants argue that no one ever attempted to stop them from using the road to access Ms. Williams's property. The evidence does not show that the parties or their predecessors ever agreed that the middle of the road, rather than the surveyed boundary line, divided the two tracts. Therefore, the circuit court's finding that appellants failed to establish that the middle of the road was a boundary by acquiescence is not clearly erroneous.

For the foregoing reasons, we affirm the circuit court's order.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Gibson Law Office*, by: *Charles Sidney Gibson*, for appellants.
*Haley, Claycomb, Roper & Anderson, PLLC*, by: *Richard L. Roper*, for appellee.

SLIP OPINION