RITA W. GRUBER, Chief Judge
Appellant Martha Rodriguez (formerly Lopez) appeals from an order of the Crawford County Circuit Court quieting title in favor of appellee, Noemi Lopez as administratrix of the estate of Guadalupe F. Lopez. Appellant raises two arguments on appeal: (1) that the circuit court improperly quieted title in favor of appellee; and (2) that this court should reverse and remand for a new trial because the trial judge was disqualified from hearing the case as the attorney who drafted the quitclaim deed at issue. We affirm.
Appellant and Guadalupe Lopez (Mr. Lopez) were in a relationship when he purchased the property located at 400 North 23rd Street in Van Buren, Arkansas. After he purchased the property, Mr. Lopez executed a quitclaim deed placing title in himself and Martha C. Salinas[1] as joint tenants with the right of survivorship. The deed was filed on May 8, 1995. The couple married on January 28, 1996, and divorced on July 21, 1998. Section VII of the divorce decree provided:
That during the marriage of the parties, they have acquired no tract of real property. That [Mr. Lopez] acquired a home and real property located at 400 North 23rd Street which is non-marital property. That [appellant] does not have an interest in said property.
Section VIII addressed the division of personal property. Paragraph X of the decree ordered that the parties shall be awarded the property as specified in paragraphs VII and VIII.
After the divorce, Mr. Lopez resided at the home and continued to pay the monthly note/mortgage until paid in full in 2007, as well as the property taxes. Mr. Lopez died in 2012. His daughter, Noemi Lopez, was the administratrix of his estate; she filed a petition for declaratory judgment to quiet title on September 2, 2015. A bench trial occurred on May 1, 2017.
Appellant testified at the bench trial that she married Mr. Lopez on January 28, 1996, separated in April 1998, and divorced in July 1998. She explained that Mr. Lopez purchased the property in April 1995. Appellant testified that she was with Mr. Lopez when he obtained the loan and explained that she was not approved for the loan because of her personal debts and credit problems. She stated that there was a mortgage on the property and that a warranty deed had been executed that transferred property to him. She testified that just before the divorce, Mr. Lopez told her that the property was in his name and that she had to leave the property. It *763 was appellant's understanding when she signed the divorce decree that the house belonged only to Mr. Lopez. Appellant testified that after the divorce, Mr. Lopez was solely responsible for the mortgage payments and that she did not pay any property taxes until 2014.
Appellant testified that Mr. Lopez never told her that he had executed the quitclaim deed, which was filed on May 8, 1998. She did not know her name was on the title to the property until 2014, when the tax collector charged her for two years of property taxes. She testified that she paid the taxes because they were two years behind, and she hired an attorney to ascertain her interest in the property. Her attorney told her she could begin cleaning the home. Appellant stated that she did not have a key to the home, but she entered the home through an open door. Appellant indicated that the statement regarding the property in the divorce decree was a mistake and that she did not discover the mistake until 2014.
Martha Lopez (Ms. Lopez), who was married to Mr. Lopez before his marriage to appellant, also testified at the trial. Ms. Lopez testified that she resumed her relationship with Mr. Lopez after he was divorced from appellant. She stated that in 1998, she and Mr. Lopez, along with two of her children, lived in the home located at 400 North 23rd Street. She explained that in 2000, she and the children moved to Springdale and they would see each other on the weekends. Ms. Lopez testified that she and Mr. Lopez paid the mortgage from their joint checking account and eventually paid off the mortgage; the bank issued a deed of release. She stated that they paid the property taxes until Mr. Lopez died in 2012. Ms. Lopez testified that she moved to Springdale after Mr. Lopez died and thereafter heard nothing about the property taxes. In addition, she indicated that Mr. Lopez intended the property to go to his children and that he never mentioned appellant as having an interest in the property in all the years they lived in the home.
Appellee Noemi Lopez testified that she is the daughter of Mr. Lopez and is the administratrix of his estate. She stated that she had lived in the home with her father, mother, and two siblings and had visited her father at the home. Appellee explained that her father lived in the home during the week while he worked and traveled to Springdale on the weekends. In addition, appellee lived in the home by herself for a year and a half. Appellee also testified that there were periods when her father rented the home and that she assisted him at times with the rent collection.
Appellee explained that her father told her that he wanted his children to have the house and that he had never mentioned appellant having an interest in the property. Appellee testified that her father never told her about the quitclaim deed, but he had told her that he had put the property in his and appellant's name as joint tenants with the right of survivorship. Appellee explained in the following colloquy:
Q. Okay. Had he ever told you that he had placed it in both their names as joint tenants with right of survivorship?
A. Yes, he did.
Q. He told you that?
A. Yes.
Q. When did he tell you that?
A. When he-we were talking about him, you know, giving the house to the kids and all that.
Q. He told you he put [appellant's] name on the property?
A. Yes. But at the divorce that it was-
Q. At least that's what he thought.
A. Yes. Correct.
*764 Appellee testified that two years after her father died, she realized someone had changed the locks on the house. The neighbors told her they had seen two men and a woman around the house, and appellee thought appellant had been the woman seen at the house. Appellee sought an order of the probate court to prevent anyone from going to the property. In addition, when she tried to pay the property taxes, she learned that they had already been paid by appellant.
Ruling in favor of appellee, the circuit court entered an order to quiet title on June 6, 2017, finding that, pursuant to the divorce decree, appellant had relinquished any interest in the property and that the divorce decree set forth that the property was the separate property of Mr. Lopez and was awarded to him in the decree. The order to quiet title added that the deed for the property had never been amended, nor had a quitclaim deed been executed to establish the property solely in the name of Mr. Lopez. In addition, the court specifically found that appellant's testimony regarding her understanding of the divorce decree and her assertion that she maintained an interest in the property after the divorce lacked credibility. The court further found that the time to present any alleged mistake in the divorce decree had long passed and that appellant was not "legally entitled under the Rules to challenge the terms of the divorce decree at this date." Appellant filed a timely notice of appeal.
We review quiet-title actions de novo, but we will not reverse findings of fact unless they are clearly erroneous. Williams v. Double S Ranch, LLC , 2016 Ark. App. 609, at 3, 509 S.W.3d 680, 683. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. Ward v. Adams , 66 Ark. App. 208, 989 S.W.2d 550 (1999). In reviewing a trial court's findings of fact, the appellate courts give due deference to the trial court's superior position to determine witness credibility and the weight to be accorded their testimony. Steele v. Blankenship , 2010 Ark. App. 86, at 10, 377 S.W.3d 293, 298.
Appellant argues that the trial court improperly quieted title in the estate because it erroneously found that she knew of her interest in the property when she signed the divorce decree.[2] Paragraph VII of the divorce decree specifically provided that appellant and Mr. Lopez did not acquire any tract of real property during the marriage; that Mr. Lopez acquired the property located at 400 North 23rd Street, which was nonmarital property; and that appellant did not have an interest in the property. The last paragraph of the decree stated that the parties shall be awarded the property as specified in paragraph VII. Appellant and Mr. Lopez, both of whom were represented by counsel, agreed to the divorce decree. Appellant sought no interest in the property at the time of the divorce. Both appellant and Mr. Lopez, as well as their lawyers, signed off on the decree.
While appellant testified that she had no knowledge of the quitclaim deed at the time of her divorce, the trial court found her testimony regarding her understanding of the divorce decree and her assertion that she maintained an interest in the property after the divorce to lack credibility. Further, the trial court recognized the actions of appellant and Mr. Lopez after *765 the divorce. Appellant testified that after the divorce, Mr. Lopez lived in the home and made all mortgage payments. Mr. Lopez paid off the mortgage in 2007 and paid the taxes until his death in 2012. It was not until 2014 that appellant paid any money toward the house since the divorce in 1998.
The trial court further found that "the time period to present any alleged error or mistake with respect to the Divorce Decree entered in July of 1998 has long passed and the [appellant] is not legally entitled under the Rules to challenge the terms of the divorce decree at this late date." Rule 60 of the Arkansas Rules of Civil Procedure provides a method and a time frame for a party to request the court to correct errors or mistakes in judgments, which appellant failed to do. Based on the facts of this case, we cannot say that the trial court's findings are clearly erroneous.
For her second point on appeal, appellant contends that this court should reverse and remand for a new trial because the trial judge was disqualified from hearing the case because he was the attorney who apparently drafted the quitclaim deed at issue. The quitclaim deed, which was filed in 1995, indicates that it was prepared by "MICHAEL J. MEDLOCK, ATTORNEY AT LAW, VAN BUREN, ARK."
Appellant failed to timely object and has thus waived the issue on appeal. Appellant acknowledges that litigants can waive certain judicial disqualifications by failing to timely object. See Worth v. Benton Cty. , 351 Ark. 149, 89 S.W.3d 891 (2002) ; Nowlin v. Kreis , 213 Ark. 1027, 214 S.W.2d 221 (1948).[3] The fact that "Michael Medlock" prepared the quitclaim deed was apparent on the face of the deed. As such, appellant had an opportunity to raise the issue of disqualification to the trial court but failed to do so.
Affirmed.
Whiteaker and Hixson, JJ., agree.

This was appellant's name prior to her marriage to Mr. Lopez. After her divorce from Mr. Lopez, she remarried and changed her name to Rodriguez.

Appellant also argues that the doctrine of res judicata does not bar her from litigating her interest in the property because she lacked a full and fair opportunity to litigate her ownership of the property before the divorce court. We do not address this argument because the trial court did not rule on this basis.

While we recognize appellant's argument that some bases for disqualification may be so fundamental as to require reversal regardless of whether it was raised below, the cases she cited are all criminal cases where a familial relationship existed between the trial judge and a prosecutor involved in the case or where the trial judge had been involved in the case as a prosecutor prior to entering the judiciary, and those cases are not applicable here.